UNITED STATES of America,
Plaintiff-Appellee,

v.

Clyde Eugene GARNER,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Lorene BROWN, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Dennis Dwayne GARNER,
Defendant-Appellant.

Nos. 75–1570 to 75–1572.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 3, 1975.

Decided Feb. 12, 1976.

Rehearing Denied in No. 75–1570
March 12, 1976.

Rehearing Denied in No. 75–1572
March 19, 1976.

Joseph C. McCarty, III, Thomason, Crawford & Hendrix, Memphis, Tenn. (Court appointed CJA), for Clyde Garner.

J. Brooke Lathram, Memphis, Tenn. (Court appointed CJA), for Lorene Brown.

Kemper B. Durand, Rosenfield, Borod, Bogatin & Kremer, P. C., Memphis, Tenn., for Dennis Garner.

Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., W. Hickman Ewing, Jr., Asst. U. S. Atty., for plaintiff-appellee.

Before WEICK, MILLER and ENGEL, Circuit Judges.

WEICK, Circuit Judge.

These appeals were consolidated for oral argument and are from convictions relating to two sets of stolen United States Savings Bonds, forgery of the names of the payees thereof, and the cashing of the bonds by persons not entitled to the money.

In counts I through VII of a 9-count indictment Clyde Eugene Garner and Lorene Brown were charged with conspiracy, in violation of 18 U.S.C. §§ 471–73,[1] substantive violations of § 472 and 2, and perjury in violation of 18 U.S.C. § 1623. Dennis Dwayne Garner was charged in counts VIII and IX with conspiracy and a substantive offense, in violation of 18 U.S.C. §§ 371, 472 and 2.

The charges against Clyde Eugene Garner and Lorene Brown, contained in counts I through VII of the indictment, involved twenty $1,000-U. S. Savings Bonds which were taken in a burglary on February 15, 1969 and were cashed in Florida in December, 1970. Counts VIII and IX of the indictment against Dennis Dwayne Garner dealt with a separate set of stolen U. S. Savings Bonds having a face value of $25,000. Counts VIII and IX of the indictment were severed by the court sua sponte from the remainder of the indictment, and the trial of Dennis Dwayne Garner was conducted separately.

Motions to dismiss the indictments were made by all three defendants on the ground that they were denied their Sixth Amendment right to a speedy trial and that the District Court failed to follow the provisions of its own Plan for the speedy disposition of criminal cases.[2] A hearing was held on these motions on September 20, 1974. The trial Judge denied the motions to dismiss and set the dates for defendants' trials.

The trials of Clyde Eugene Garner and Lorene Brown were set for November 25, 1974. On November 29, 1974 the jury returned verdicts of guilty against both defendants. Clyde Eugene Garner was convicted on the conspiracy count and on one perjury count. He was sentenced to five years' imprisonment on the conspiracy conviction and two years' imprisonment on the perjury conviction, the sentences to be served consecutively. Lorene Brown was convicted on one count of conspiracy and three counts of perjury. She was sentenced to three

---

1. § 471. Obligations or securities of United States

Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both.

§ 472. Uttering counterfeit obligations or securities

Whoever, with intent to defraud, passes, utters, publishes or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, nor both.

§ 473. Dealing in counterfeit obligations or securities.

Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both.

2. The Plan created pursuant to the mandates of Fed.R.Crim.P. 50(b) by the District Court for the Western District of Tennessee for the speedy disposition of criminal cases provides:

2. *Time Requirements*

. . . . .

(b) Trial. The trial shall commence within 90 days after a plea of not guilty, if the defendant is held in custody, or within 180 days if he is not in custody.

years' imprisonment on each count; however, her sentences were to be served concurrently.

Dennis Dwayne Garner's trial was set for November 4, 1974. Due to circumstances which are not of record and of which appellant does not complain, his trial was actually held on January 10, 1975. Dennis Dwayne Garner waived his right to a jury trial and was tried by the District Judge. He stipulated the facts. The District Judge found him guilty on the conspiracy count, and the substantive charge against him was dismissed. The Judge suspended his sentence on the conspiracy conviction and placed Dennis Dwayne Garner on probation for three years, the period of probation to run from the time of the termination of the sentence he was serving on a similar charge imposed in the District Court of South Carolina.

I

As before stated all three defendants were charged with conspiracy to violate 18 U.S.C. §§ 471–73. On appeal they contend that these sections of the Code do not relate to the forging of endorsements on genuine obligations of the United States; rather they submit that these sections prohibit the counterfeiting or altering of obligations of the United States.

There was no proof introduced at trial that the stolen United States Savings Bonds had been forged or counterfeited; the evidence indicated only that endorsements on genuine bonds had been forged. Appellants reason that because the proof submitted at trial did not constitute a violation of 18 U.S.C. §§ 471–

73, the indictments against them should be dismissed.

It is clear that the proof presented at the trials of Clyde Eugene Garner and Lorene Brown and the facts stipulated by Dennis Dwayne Garner are sufficient to support a conviction for conspiracy to violate 18 U.S.C. § 495, which prohibits forgery of any *writing* for the purpose of obtaining or receiving money from the United States.[3] Appellants concede as much; however, the question remains whether the facts proved at trial also establish a violation of §§ 471–73.

The Supreme Court has considered this issue and has determined that the forgery of an endorsement on a genuine government obligation does not constitute a violation of §§ 471–73. In *Prussian v. United States,* 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931), the Court held that a forged endorsement of the payee's name on a genuine government draft was not a forgery of an "obligation of the United States" within the meaning of 18 U.S.C. § 262 (the predecessor of 18 U.S.C. § 471). We believe that analysis is directly applicable to the case at bar.

The ultimate resolution of *Prussian,* however, was the holding that an indictment under one penal provision was not rendered defective because it also contained the erroneous allegation that another penal provision was violated. Although the Supreme Court determined that the inappropriate statutory provision was cited in the indictment, it refused to dismiss the indictment as, first, the accused was left with no uncertainty as to the charge against him, and second,

---

**3.** *§ 495. Contracts, deeds, and powers of attorney*

Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money; or

Whoever utters or publishes as true any such false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or

Whoever transmits to, or presents at any office or officer of the United States, any such writing in support of, or in relation to, any account or claim, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited—

Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

the judgment was sufficient to bar any future prosecution for the same offense.

These same two factors have been used consistently by the Supreme Court in testing the sufficiency of an indictment. *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). Applying these factors to the cases before us, we are of the opinion that the indictment was not defective.

It is true that count I of the indictment incorrectly charged Clyde Eugene Garner and Lorene Brown with conspiring to violate 18 U.S.C. §§ 471–73. However, count I in eighteen separate paragraphs also specified detailed facts with regard to the conspiracy. Names of the principal actors and specification of the major overt acts and the dates on which those acts took place were included in the indictment.

Count VIII incorrectly charged Dennis Dwayne Garner with conspiring to violate 18 U.S.C. §§ 471–73. In that count twenty-six separate paragraphs set out the specific factual circumstances upon which the charge was based. None of the defendants can assert that he or she was not aware of the charge against him or her.

The facts as outlined in counts I and VIII indicate that the U. S. Savings Bonds were genuine and that the conspiracy with which the defendants were charged involved the forging of endorsements on genuine bonds. Appellants cannot claim any uncertainty as to the crimes with which they were charged. In addition, counts I and VIII are sufficiently specific to provide a bar to any future prosecution for the same offense.

Defendants have been unable to demonstrate any prejudice resulting to them because of the error in the indictment. The penalty for conspiracy is provided in 18 U.S.C. § 371. We are of the opinion that the indictment was sufficient to charge an offense against the defendants.

Further support for our view is found in Fed.R.Crim.P. 7(c)(3), which provides:

Error in the citation [of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated] for its omission shall not be ground for dismissal of the indictment or information or for reversal of a conviction if the error or omission did not mislead defendant to his prejudice.

■ The fact that an indictment contains a miscitation of a statute is not grounds for dismissing the indictment unless the defendant is misled thereby. *United States v. Hutcheson,* 312 U.S. 219, 229, 61 S.Ct. 463, 85 L.Ed. 788 (1941); *United States v. Calabro,* 467 F.2d 973, 981 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1357, 35 L.Ed.2d 587, *rehearing denied,* 411 U.S. 941, 93 S.Ct. 1891, 36 L.Ed.2d 404 (1973); *United States v. VanWest,* 455 F.2d 958 (1st Cir. 1972). There is no contention that the miscitation in the indictment misled the defendants as to the charges against them; indeed, the recitation of specific facts contained within the indictment, alone, is sufficient to adequately inform the defendants of the nature of the charges.

This Circuit has adhered to the principle that if the indictment charges acts that are illegally under an existing federal statute, then the indictment is not invalidated because it cited the wrong statute. *United States v. Perez,* 457 F.2d 555 (6th Cir. 1972); *Pettway v. United States,* 216 F.2d 106 (6th Cir. 1954).

We conclude that since the *facts* alleged in the indictment charged the appellants with respect to forged endorsements on genuine government obligations (a violation of 18 U.S.C. § 495), the fact that the proper statute was not cited in the indictment does not require dismissal of that indictment.

II

■ Appellants further contend that their Sixth Amendment right to a speedy trial was violated because over one year elapsed between the time they

entered their pleas and the time they were finally brought to trial. The right to a speedy trial is to be determined on the basis of an *ad hoc* balancing test. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The factors to be considered include the length and reason for the delay, the defendant's assertion of this right and any resulting prejudice to the defendant. 407 U.S. at 530–33, 92 S.Ct. 2782.

■ Because of the length of the delay of the trials in these cases it is appropriate to apply the balancing test announced in *Barker v. Wingo, supra. United States v. Mulligan,* 520 F.2d 1327 (6th Cir. 1975). First, although the length of the delay in this case exceeded the recommended period between the time of a plea of not guilty and the time of trial in the Plan adopted in the Western District of Tennessee, the delay was not unreasonable. Although the reasons for the delay bear scrutiny, the length of the delay alone is not sufficient to warrant a dismissal of the indictment.

The reason for the delay of the trials was explained by the United States Attorney and the District Judge in the September 20, 1974 hearing on defendants' motions to dismiss for lack of a speedy trial. The Government was unable to apprehend other persons indicted by the grand jury as co-conspirators in this case. It is the standard practice of the United States in the Western District of Tennessee to attempt to apprehend all co-defendants indicted in a case before commencing the trial. The District Court is able thereby to conserve judicial resources by resolving the issues affecting all co-defendants in a particular criminal case in one proceeding.

■ Although this policy would not justify an excessive delay, given the failure of the defendants to move for the severance of their cases on speedy trial grounds, we are of the opinion that the reason expressed for the delay in defendants' trials constituted sufficient justification for that delay. A motion for severance was available to appellants to establish their right to a speedy trial, giv-

en the justification for the delay used by the Government; appellants neglected to make this motion.

We conclude that there is no evidence in this case of the judicial or prosecutorial inefficiency or neglect which the right to a speedy trial was designed to prevent.

We observe that appellants did assert their right to a speedy trial, and we take note of that fact in balancing the factors which determine whether the right to a speedy trial was denied; but, we are of the view that the delay in no way prejudiced any substantial rights of the defendants. The trial Judge made a specific effort to avoid such prejudice by granting a broader scope of discovery than that to which the defendants were entitled. Appellants make only broad, generalized assertions in support of the proposition that they were prejudiced by the delay. Appellants cite no specific inability to find witnesses because of the delay and no instance of a witness being unable to recall certain facts because of the delay in trial. In addition, appellants do not assert that the delay was intended to provide any kind of tactical advantage for the Government.

According to *Barker* the most important interest of the defendant which the right to a speedy trial was designed to protect is the possible impairment of a defense. *Trigg v. Tennessee,* 507 F.2d 949, 954 (6th Cir. 1974), *cert. denied,* 420 U.S. 938, 95 S.Ct. 1148, 43 L.Ed.2d 414, *rehearing denied,* 420 U.S. 998, 95 S.Ct. 1439, 43 L.Ed.2d 680 (1975). Generalized assertions of an inability to defend do not suffice to establish that the lack of a speedy trial caused prejudice. In addition, *Barker* mandates that the other interests of the defendant in the right to a speedy trial be weighed by this Court; those interests include minimizing the anxiety and concern of the accused and preventing oppressive pre-trial incarceration.

There is no indication in the record that appellants suffered any undue anxiety as a result of the pending indictment. While we recognize that adverse

effects are inherent in any delay of trial, there has been no allegation or evidence of inconvenience indicating that these adverse effects were substantial. *United States v. LaBorde,* 496 F.2d 965, 968 (6th Cir. 1974); *United States v. Daley,* 454 F.2d 505, 509 (1st Cir. 1972).

With regard to the interest of the defendants in avoiding oppressive pre-trial incarceration, neither Clyde Eugene Garner nor Lorene Brown were incarcerated pending trial. Dennis Dwayne Garner was released on bond after his indictment in Tennessee; however, during much of the time while he was awaiting trial in Tennessee he was serving another sentence which was imposed on him by the District Court in South Carolina. He claims he was prejudiced by the delay in his trial because he was denied privileges while the Tennessee indictment was pending against him, which privileges are routinely granted to other prisoners. In addition, he notes that the Parole Board would not consider his application for parole from his South Carolina conviction until the Tennessee case was terminated.

No doubt Dennis Dwayne Garner did suffer some inconvenience because of the indictment pending in Tennessee; however, there was no "oppressive pre-trial incarceration." We considered this inconvenience when balancing the effect on Dennis Dwayne Garner of the delay of trial, but, without more it does not reach the level of constitutional significance.

In balancing the *Barker* factors in this case we find that the period of over one year which elapsed between the time appellants entered their pleas and the time of their trials did not constitute a violation of their Sixth Amendment right to speedy trials.

■ Defendants argue further that the mere failure of the District Court to adhere to its own Plan for the speedy disposition of criminal trials constitutes a basis for dismissing the indictments unless specific findings are made by the District Court as to the reasons for the delay. We find no merit in that argument. The Plan of the District Court for the Western District of Tennessee specifically provides that the failure to conform to the time limits prescribed by the Plan shall not require dismissal of the prosecution. Because the specific time limits prescribed by the Plan are not constitutionally mandated the failure to adhere thereto is not a *per se* violation of the Constitution requiring dismissal of the indictment.

The purpose of the Plan is to limit delays caused by prosecutorial or judicial inefficiency or neglect. We do not find such inefficiency or neglect on the part of the United States Attorney or the trial Judge in the cases before us.

We are of the opinion, therefore, that the mere failure to conform to a Plan for the speedy disposition of criminal cases, developed pursuant to Fed.R. Crim.P. 50(b), without more constitutes an insufficient basis on which to require a dismissal of a criminal indictment.

### III

Appellant Clyde Eugene Garner contends that he should have been granted a new trial by the District Judge, either on the ground that there was prosecutorial suppression of evidence favorable to him, or on the ground that newly discovered evidence was presented to the District Judge which justified a new trial.

■ Appellant contends first that the United States Attorney deliberately suppressed the refusal of one Government witness subpoenaed by the Government (Charles Bourne) to corroborate the testimony of the chief prosecution witness. There is no evidence in the record to support this contention. The record indicates that the Assistant U. S. Attorney trying the case never spoke to Bourne; he was informed by investigators that Bourne would "take the Fifth Amendment" if called to testify. On that basis the Assistant U. S. Attorney decided not to call the witness. There is no factual basis for appellant's assertion that the Government suppressed any information with regard to the testimony of Bourne.

■ In the alternative, appellant contends that the affidavits of Frank and Jane Nance, filed in support of his motion for a new trial, constituted newly discovered evidence sufficient to require the District Judge to order a new trial, pursuant to Fed.R.Crim.P. 33. The essence of those affidavits was that Bourne told the Nances that the chief prosecution witness (Johnny Austin) would pay them for corroborating his testimony. Counsel for appellant admitted, in response to a question from the bench during his oral argument, that this evidence would be valuable only to impeach Austin, the chief Government witness. After careful consideration we are convinced that, at best, this so-called "newly discovered" evidence could be used only to impeach Austin.

■ Motions for a new trial are not favored and are granted only with great caution. *United States v. Hoffa,* 382 F.2d 856, 862 (6th Cir. 1967), *cert. denied,* 390 U.S. 924, 88 S.Ct. 854, 19 L.Ed.2d 984 (1968). To warrant the ordering of a new trial the newly discovered evidence must be not merely cumulative or impeaching in character, but must be such that it would probably produce a different verdict in the event of retrial. *United States v. McCoy,* 478 F.2d 846 (4th Cir. 1973); *United States v. Kahn,* 472 F.2d 272 (2d Cir.), *cert. denied,* 411 U.S. 982, 93 S.Ct. 2270, 36 L.Ed.2d 958 (1973). In this case it is conceded that the evidence would be of value only to impeach the chief Government witness; in addition, the evidence is not such that it would probably produce a different verdict in the event of a retrial. We find therefore that the District Judge did not abuse his discretion by failing to grant Clyde Eugene Garner a new trial.

## IV

Appellant Lorene Brown contends that the trial Judge committed reversible error by failing to charge the jury on her theory of the case. Throughout the trial Lorene Brown had maintained that her illegal actions were coerced by threats made on her daughter's life, the threats having been made by an anonymous caller. Lorene Brown's counsel had requested a rather lengthy jury instruction containing a detailed factual outline of that theory of the case, but the trial Judge refused to read that instruction to the jury. In our opinion the District Judge did not err in declining to give the requested instruction. Counsel inquired whether any changes could be made in the proposed instruction to render it acceptable. The District Judge reiterated his refusal to instruct the jury with regard to Lorene Brown's theory because he was "not going to give one person's contention as to what the facts are."

First, we note that the failure to instruct on appellant's theory of the case was irrelevant to her convictions on the three perjury counts. All three perjury counts involved false and material declarations made to the grand jury on October 10, 1973. On that day Lorene Brown was no longer maintaining silence in order to protect her daughter. She first broke her silence in August, 1973 when she told the president of the bank in which she worked the whole story of the threatening telephone calls. On August 27, 1973, in an interview with the Secret Service, Lorene Brown again told the "whole truth" about her role in the scheme to redeem the stolen U. S. Savings Bonds, and about the threats on her daughter's life which motivated her illegal actions and subsequent silence.

Indeed, Lorene Brown's contention was that the story she told before the grand jury was completely true. The jury in the District Court found otherwise, as evidenced by its verdict of guilty on the perjury charges. We conclude that appellant's theory of the case, *i. e.* that she was coerced into committing the illegal actions with which she was charged, did not relate in any way to her perjured testimony before the grand jury.

■ We have studied carefully the instructions given by the District Judge to the jury, and it is our opinion

that the trial Judge should have presented Lorene Brown's theory of the case in his instructions to the jury. In a criminal case it is reversible error for a trial Judge to refuse to present adequately a defendant's theory of defense. *United States v. Blane,* 375 F.2d 249 (6th Cir.), *cert. denied,* 389 U.S. 835, 88 S.Ct. 41, 79 L.Ed.2d 96, *rehearing denied,* 389 U.S. 998, 88 S.Ct. 459, 19 L.Ed.2d 503 (1967).

The trial judge was not required to adopt the language suggested by a defendant in the Court's instructions to the jury; however, when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions. *United States v. Swallow,* 511 F.2d 514 (10th Cir. 1975). Even when the supporting evidence is weak or of doubtful credibility its presence requires an instruction on the theory of defense. *Tatum v. United States,* 88 U.S.App.D.C. 386, 190 F.2d 612 (1951).

In this case appellant Lorene Brown, herself, testified that the reason she committed the illegal acts was to protect her daughter from the anonymous threats; this testimony was corroborated by her friend, Edna Goodman. Because there was some evidence supporting Lorene Brown's theory of the case she was entitled to an instruction on that theory. The trial Judge erred in failing to include her theory of the case in his instructions to the jury.

■ Lorene Brown was sentenced to three years' imprisonment on each of the four counts on which she was convicted, the sentences to run concurrently. We have previously determined that the perjury convictions were untainted by any failure to instruct on Lorene Brown's theory of the case. Because the issue of law appealed by Lorene Brown affects only the validity of the conspiracy conviction, a reversal of the convictions and sentences under the perjury counts is not

required. *United States v. Kemp,* 504 F.2d 421 (6th Cir. 1974). *Accord, United States v. Romano,* 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965).

The question whether to consider appellant's claim as to the sufficiency of the jury instructions is within the discretion of this Court in view of the concurrent sentence rule. *Ethridge v. United States,* 494 F.2d 351 (6th Cir.), *cert. denied,* 419 U.S. 1025, 95 S.Ct. 504, 42 L.Ed.2d 300 (1974). Because of the possibility of prejudice to appellant when she is considered for parole, we exercise our discretion and reverse her conviction under the conspiracy count; however, her convictions under the perjury charges are affirmed

V

Appellant Dennis Dwayne Garner had entered a plea of guilty in United States District Court in South Carolina to a charge of conspiring to violate 18 U.S.C. § 2314 (knowingly transporting in interstate commerce stolen securities having a value in excess of $5,000), and received a three-year sentence on that charge; however, he faced charges in Tennessee which were based on the same criminal episode. The same stolen U. S. Savings Bonds were the subject of both the Tennessee and the South Carolina indictments. Thus, he filed a motion to dismiss the Tennessee indictment on double jeopardy grounds; the Tennessee indictment charged a conspiracy to violate 18 U.S.C. §§ 471–73 and the substantive violation of 18 U.S.C. §§ 2 and 472. The Tennessee District Court denied the motion to dismiss the indictment, citing *United States v. Engle,* 458 F.2d 1021 (6th Cir.), *cert. denied,* 409 U.S. 863, 93 S.Ct. 154, 34 L.Ed.2d 111 (1972), in support of its decision.[4] Dennis Dwayne Garner then stipulated the facts; the District Judge found that he was guilty of the conspiracy charge and dismissed the substantive count against him.

4. We note that the *Engle* case is inapposite. *Engle* states specifically that the criminal activity which was the subject of the second indictment in that case could not possibly have

been joined in the earlier proceeding. That is clearly not the situation faced by Dennis Dwayne Garner.

The District Judge in Tennessee was concerned because the Tennessee and the South Carolina indictments were based on one criminal episode. He took account of that fact in the sentencing process; he suspended appellant's sentence and placed him on probation for three years, the period of probation to run from the termination of the sentence imposed on appellant by the South Carolina District Court.

On appeal Dennis Dwayne Garner submits that the Tennessee conviction was in violation of the Double Jeopardy Clause contained in the Fifth Amendment to the Constitution.

The Double Jeopardy Clause is intended to serve as a rule of finality "to prevent vexatious piecemeal prosecution whether the result of an intent to harass, a desire to have more than one shot at obtaining a conviction or severe sentence, or mere prosecutorial caprice or carelessness." *Engle, supra* at 1025.

█ The scope of the Double Jeopardy Clause has been the source of some debate in recent years. It provides:

" . . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . .." ( U.S.Const., Amend. V)

There has been confusion over what is meant by the term "the same offense." In an attempt to give content to that phrase the Supreme Court adopted the "same evidence test" in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), while approving a multiple-count indictment arising out of one criminal situation. The essence of the same evidence test is that when the same act or transaction constitutes a violation of two statutory provisions, the test to be applied to determine whether there are two offenses, or only one, is "whether each provision requires proof of a fact which the other does not." *Id.* 284 U.S. at 304, 52 S.Ct. at 182.

█ In Dennis Dwayne Garner's case it is clear that the two statutory provisions under which he was found guilty, one by plea and the other by trial, constituted separate offenses under the "same evidence test." In order to violate § 2314, all appellant needed to have done was to conspire to transport, knowingly, in interstate commerce, stolen securities with a value of $5,000.

Conviction on the charge of conspiracy to forge endorsements on the U. S. Savings Bonds with the intent of obtaining money from the United States required proof of an entirely different set of facts. It is not relevant for purposes of the Double Jeopardy Clause that both indictments arose out of the same criminal episode. There is no question that there would have been no violation of the prohibition against double jeopardy had both charges been joined in the same indictment.

█ Under the "same transaction test," proposed by Mr. Justice Brennan in *Ashe v. Swenson,* 397 U.S. 436, 448, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), which case dealt with collateral estoppel, the prosecution would be required to join all of the charges as to each person in a single criminal trial. Mr. Justice Brennan argued for the rejection of the "same evidence test" as it virtually annuls the prohibition against double jeopardy. A majority of the Supreme Court has never adopted such a rule of compulsory joinder as a constitutional requirement. We decline to do so in the case at bar.

Because each statutory violation charged required proof of facts which the other did not, we hold that there was no violation of the prohibition against double jeopardy in this case. Although the charges faced by appellant arose from the same criminal transaction, the Government is not required under the Constitution to join in one proceeding all charges arising out of that transaction. However, we note that in most circumstances compulsory joinder is the only sensible solution to the problem of avoiding a multiplicity of prosecutions arising when a number of statutory provisions are violated by a particular defendant during one criminal episode. A rule of

compulsory joinder would conserve judicial resources.

The dual prosecutions of Dennis Dwayne Garner constituted a waste of judicial resources. Both charges should have been joined in one proceeding. Although we are unwilling to find that joinder is constitutionally required, we question the wisdom of initiating two separate criminal prosecutions in this case in different jurisdictions.

In light of the goal of conserving judicial resources, United States Attorneys should attempt to adhere to such a rule of compulsory joinder. This adherence would constitute sound prosecutorial action.

The judgments of conviction of Clyde Eugene Garner and Dennis Dwayne Garner are affirmed. The judgment of conviction of Lorene Brown is affirmed as to Counts IV, V and VI, involving convictions for perjury, and is reversed as to the conspiracy Count I.