833 F.2d 1014
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Scott D. GRIFFIN, Defendant-Appellant.
 No. 87-1460.
 United States Court of Appeals, Sixth Circuit.
 Nov. 16, 1987.
 
 Before ENGEL and CORNELIA G. KENNEDY, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Scott Griffin was convicted by a jury of four counts of mail fraud. He appeals his conviction on the grounds that the District Court improperly excluded testimony and refused a proper jury instruction. He maintains first that the jury should have been allowed to hear the testimony of two witnesses that defendant had told them his version of the events in question. The District Court properly excluded this testimony since there was no charge of recent fabrication to be rebutted, and the state of defendant's mind at the time the statements were made was not relevant. Second, defendant contends that it was error to exclude the testimony of another witness of implied threats made by a third party against the witness. The District Court correctly held that this testimony was not connected to the defendant, and therefore not relevant. Finally, the District Court's refusal of a requested jury instruction on coercion was proper because the evidence did not address all elements of that defense. Since there is no merit to any of defendant's arguments, the conviction is affirmed.
 
 
 2
 Griffin filed a claim with his insurance company reporting his van had been stolen. It is undisputed that the claim involved deliberate falsehoods by Griffin as to the circumstances of the loss of his van, and that the claim and its processing involved use of the mails. The government argued at trial, and the jury apparently agreed that Griffin had arranged with Albert ("Big Al") Morrison to get rid of the van so that Griffin could collect the insurance. Griffin contends that he was trying to sell the van, that Morrison unilaterally took and disposed of it, and then told Griffin to file the false claim. Griffin maintains that he was too physically afraid of Morrison to do otherwise.
 
 
 3
 Griffin contends that, had the jury believed his story, he would have been acquitted. It is not clear that defendant's story, if believed by the jury, would absolve him of mail fraud. Defendant argues that his van really was stolen, and he therefore had a right to the money he received. According to this theory, the admitted intentional falsehoods contained in the insurance claim do not constitute fraud.[1]
 
 
 4
 While it is true that the mail fraud statute, 28 U.S.C. Sec. 1341, requires some harm to a property interest rather than to "intangible rights," McNally v. United States, No. 86-234 (U.S. June 24, 1987), defendant's admitted acts fall under the statute's prohibition against "obtaining money or property by means of false or fraudulent pretenses, representations, or promises" through use of the mails. Griffin's theory is that it cannot be fraud unless a defendant receives some tangible benefit to which he is not entitled, and that he received from the insurance company only the amount of money actually due him if his van were stolen.[2]
 
 
 5
 However, the jury did not believe Griffin's version. Therefore, provided that the jury was not improperly prevented from considering evidence favorable to defendant's theory, or improperly instructed, the scope of section 1341 need not be reached.
 
 
 6
 Prior Consistent Statements and "Then Existing State of Mind": Defendant's first claim of error involves the refusal to admit the testimony of two defense witnesses, Theodore Grajiotti and Timothy Swanson, who would have testified about conversations they had with Griffin. Griffin had already testified that in these conversations he had informed Grajiotti and Swanson of his version of events, including his fear of Morrison, and had asked for advice. The District Court refused to permit Grajiotti and Swanson to testify merely to corroborate Griffin. Defendant argues that the testimony should have been allowed, on two grounds: (a) that it was not hearsay because it was a prior consistent statement offered to rebut a charge that Griffin's story of being in fear of Morrison was a recent fabrication, see Fed.R.Evid. 801(d)(1)(B); and (b) as an exception to the non-admissibility of hearsay because it was a statement of Griffin's then existing state of mind, see Fed.R.Evid. 803(3).
 
 
 7
 (a) "Prior consistent statement:" Rule 801(d)(1)(B) provides that testimony is not hearsay when offered to rebut a charge of recent fabrication or improper motive. Such a charge may be implied rather than explicit, but we are unable to find any such charge implied in the testimony which Grajiotti and Swanson would have rebutted. Their testimony was offered to rebut that of an FBI agent which fully supported Griffin's position that he had told the agent of Morrison's threats. The jury evidently believed that the story was false even though Griffin had told it all along. Grajiotti and Swanson would only have testified that Griffin had, indeed, been telling the same story to them. The recognized "broad discretion" of a trial court on whether to admit prior consistent statements, United States v. Hamilton, 689 F.2d 1262, 1273 (6th Cir.1982), cert. denied, 459 U.S. 1117 (1983) was not abused here.[3]
 
 
 8
 (b) "Then existing state of mind:" Defendant argues that the testimony of Grajiotti and Swanson was admissible evidence of the defendant's state of mind at the time of the conversations. However, defendant's state of mind then is not relevant. It may be true, as defendant argues, that his state of mind at that time is probative of why "he continued to refrain from 'coming clean' through fear of retaliation from Morrison," Griffin brief at 4. But Griffin's failure to "come clean" at the time of the conversations with Grajiotti and Swanson, which was after Griffin had been indicted, was not at issue in the trial. The relevancy of Griffin's state of mind after indictment to the question of whether Morrison had coerced him into filing a false claim is very remote, and Griffin himself had already been allowed to testify about it. It was not error to exclude this testimony.
 
 
 9
 Extrinsic Evidence of Morrison's Character: Defendant's next claim is that William Smitty should have been permitted to testify about Morrison's violent character. Smitty would have testified, however, that he never heard Morrison make a threat. Rather, he heard Morrison's employer, Joseph Tagai,[4] make what Smitty interpreted as threats. Defendant's theory is that Morrison acted as his employer's "enforcer," and that it was understood that any threats made by Tagai would have been carried out by Morrison. But defendant was unable to lay an adequate foundation to admit Smitty's testimony concerning Tagai's threats. Smitty heard none at Griffin's place of business, or in Griffin's presence, and Smitty never told Griffin about them. There was therefore no connection between the threats Smitty would have testified he heard Tagai make and Griffin's fear of Morrison. The District Court properly exclude this testimony.
 
 
 10
 Coercion Instruction: Finally, Griffin contends that the District Court erred in refusing to instruct the jury on the defense of coercion or duress. The defendant requested the inclusion of a standard instruction on duress, and cites United States v. Garner, 529 F.2d 962 (6th Cir.1975) to support his claim that the refusal of this instruction was error. Garner held that it was reversible error for the trial judge to refuse a requested coercion instruction when there is corroborating evidence: "Because there was some evidence supporting [defendant's] theory of the case she was entitled to an instruction on that theory," and this is so "[e]ven when the supporting evidence is weak or of doubtful credibility," id. at 970.
 
 
 11
 Here, even if Griffin's version of events is simply accepted as true, the District Court was correct in refusing to instruct on duress. This Court quoted the words of a sister circuit in defining this defense:
 
 
 12
 "Basically a defense of duress or coercion requires that there be an immediate threat of death or serious bodily harm which requires the defendant to commit the criminal act, and it must be in a situation in which there was no opportunity to avoid the danger....
 
 
 13
 The defendants are required to introduce facts sufficient to trigger consideration of the coercion defense by way of an instruction. They must introduce evidence on all elements of the defense. If evidence is introduced, but it is apparent that all of the requirements of the coercion defense are not addressed, the trial court is not obligated to allow the evidence to remain for consideration by the jury."
 
 
 14
 United States v. Campbell, 675 F.2d 815, 821 (6th Cir.) cert. denied, 459 U.S. 850 (1982) (citation omitted), quoting United States v. Campbell, 609 F.2d 922, 924 (8th Cir.1979), cert. denied, 445 U.S. 918 (1980).
 
 
 15
 Even if the facts are as Griffin claims, he was not facing the sort of immediate threat required for a coercion defense. He could have sought police protection before filing his false insurance claim. He could have simply not filed the claim and accepted the loss of his van to Morrison. Although such a financial sacrifice would have been painful, in a way, it is not the avoidance of this sort of pain which justifies the commission of a crime. Griffin admitted in his testimony that Morrison never threatened or coerced him about filing the claim, but only, accepting Griffin's interpretation, threatened him if Griffin turned him in. (Morrison never got and apparently never requested any of the insurance money received by Griffin.) Morrison was not present when the claims were filed.
 
 
 16
 On these facts, the District Court was correct in refusing to present to the jury a defense as to which Griffin failed to address all of the requirements.
 
 
 17
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Griffin told the insurance company and the police that the van had been stolen by two individuals who had taken it on a test drive. This story was completely fabricated
 
 
 [2]
 There were disputes as to the condition of the van, its mileage, and the amount it was actually worth, so even on defendant's theory, the facts may not support him
 
 
 [3]
 At trial, there was much emphasis on when the prior consistent statements had been made. Whether the prior consistent statement was made before the motive to fabricate arose goes to the relevancy of the testimony, not to whether it is hearsay, Hamilton, 689 F.2d at 1273-74. If the FBI agent had testified that Griffin had not told him of the threats, rebuttal of that charge of recent fabrication might well be relevant, even though both sets of statements would have occurred after the motive to fabricate had arisen
 
 
 [4]
 Or Tagi