1 F.3d 1242
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lorraine FURTADO, Defendant-Appellant.
 No. 92-3725.
 United States Court of Appeals, Sixth Circuit.
 July 12, 1993.
 
 Before NELSON and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a conviction for theft of government money in violation of 18 U.S.C. Sec. 641. The issues raised on appeal are (1) whether the evidence was sufficient to warrant submission of the case to the jury and (2) whether the district court erred in denying a motion for a new trial. We agree with the district court's assessment of the evidence, and we find no abuse of discretion or other error in the denial of the motion for a new trial. We shall therefore affirm the conviction.
 
 
 2
 * The defendant, Lorraine Furtado, was a professor at Ohio State University. Her father, Joseph Lizandro Furtado, had been an employee of the Southern Pacific Railroad in California. Mr. Furtado retired in January of 1968 and began receiving retirement benefits from the Railroad Retirement Board ("RRB"). The payments were made by check until 1977, at which time Mr. Furtado arranged to have the funds deposited directly into a joint checking account at the American National Bank in Bakersfield, California. The account was in the name of Joseph and Lorraine Furtado.
 
 
 3
 Mr. Furtado died in Columbus, Ohio, on March 16, 1986. In January of 1987 the RRB learned from the Health Care Financing Administration that Medicare records indicated that Mr. Furtado was no longer living. RRB's policy is to continue paying benefits until it has verified a beneficiary's death. RRB therefore asked its Oakland, California, office to verify that Mr. Furtado was dead. Unable to do so itself, the Oakland office contacted the American National Bank. The bank provided a copy of the death certificate, and the RRB finally stopped paying benefits in March of 1988. The RRB calculated that it overpaid a total of $17,527.38 from the time of Mr. Furtado's death until the payments were terminated. It is undisputed that all or substantially all of this money was withdrawn from the account by Ms. Furtado.
 
 
 4
 On August 1, 1991, a federal grand jury indicted Ms. Furtado in a one count indictment charging that between April of 1986 and March of 1988 she willfully and knowingly embezzled and converted to her own use money which was the property of the United States. Found guilty by a petit jury, she was ordered to make restitution and was sentenced to a three year term of probation and four months of home confinement. The district court (Graham, J.) denied motions for a judgment of acquittal pursuant to Rule 29(c) and for a new trial pursuant to Rule 33, Fed.R.Crim.P.
 
 II
 
 5
 In ruling on a motion for judgment of acquittal, a trial court must consider all of the evidence in a light most favorable to the government. The court may grant such a motion only when it appears that the evidence is legally insufficient to sustain a conviction. The government must be given the benefit of all inferences that can reasonably be drawn from the evidence, regardless of whether the evidence is merely circumstantial. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. See United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985). This court's review involves application of the same standard: after considering the evidence as a whole, taken in the light most favorable to the government, together with all legitimate inferences to be drawn therefrom, we must determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. See id; see also Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 6
 In her brief on appeal Ms. Furtado stresses evidence showing that she sent letters to the Southern Pacific Railroad, the RRB, and the American National Bank notifying each of them of her father's death. But proof that Ms. Furtado did everything she reasonably could have done to shut off the flow of RRB money into the joint bank account is by no means inconsistent with a finding that she knowingly withdrew funds that the RRB deposited in the account by mistake. During the period of approximately two years in which RRB funds were paid into the joint account following Mr. Furtado's death, Ms. Furtado used money from the account to pay balances due on credit cards, lines of credit, and retail accounts. For example, charges on Ms. Furtado's Discover card account, which was opened the year after her father's death, were paid with funds drawn on the joint account. The real question that the jury was called upon to decide was what Ms. Furtado's state of mind was when she made the withdrawals.
 
 
 7
 Ms. Furtado presented a strong case that her withdrawals from the joint account were innocent. Although she held advanced degrees in business education and law, Ms. Furtado paid less attention than she might have done to her personal finances. She never balanced a checkbook, for one thing, and although she glanced at the balance shown on the first page of the monthly statements she received from American National Bank, she testified that she never looked at the second page. It was the second page of the statements on which the direct deposits from the RRB were reported. There was evidence that Ms. Furtado had no concern about whether the account contained sufficient funds to cover the checks she drew against it, because the bank provided overdraft protection in the form of a $4,000 credit line. Under this arrangement the bank added funds in hundred-dollar increments as needed to cover checks for which there would otherwise be insufficient funds.
 
 
 8
 There was also strong evidence, however, that Ms. Furtado's withdrawals from the joint account were made with guilty knowledge. The evidence showed that the direct deposits made by the RRB represented the main source of money going into the joint account. Ms. Furtado had no reason to suppose that the bank would ever advance more than $4,000 under the line of credit, and such advances would be made only to cover overdrafts; yet Ms. Furtado admittedly knew, from looking at the first page of her monthly statements, that the balance in the joint account was sometimes as high as $5,000 or $6,000. A rational jury could easily have concluded that when she wrote checks on the joint account, Ms. Furtado knew that she was drawing against funds placed there by the RRB.
 
 
 9
 We might not have reached the conclusion the jury did if we had been acting as fact finders, and we are not without sympathy for Ms. Furtado's argument that the jury's verdict was against the manifest weight of the evidence. Motions for a new trial are not favored, however, and are granted only with great caution. See United States v. Garner, 529 F.2d 962, 969 (6th Cir.), cert. denied, 426 U.S. 922 (1976). Courts of appeals do not sit as "thirteenth jurors" to judge the credibility of witnesses. See United States v. Ashworth, 836 F.2d 260, 266 (6th Cir.1988). "[W]e are limited to examining the evidence produced at trial to determine whether the district court's determination that the evidence does not 'preponderate heavily against the verdict' is a clear and manifest abuse of discretion." Id. (citations omitted). We discern no such abuse of discretion here.
 
 
 10
 The other grounds on which Ms. Furtado sought a new trial need not detain us long. Ms. Furtado complains that the Assistant United States Attorney who prosecuted the case referred to her on three occasions as "Dr. Furtado." She maintains that this appellation was intended "to have the jury hold [her] to a higher degree of care for her personal finances than one would a less-educated individual." But Ms. Furtado does hold a Ph.D. in business education, and the prosecution's limited use of the honorific was not unwarranted. The jury, moreover, was certainly entitled to consider Ms. Furtado's educational background in assessing her state of mind.
 
 
 11
 Ms. Furtado also complains of references by the prosecution to the fact that RRB funds were expended on items from Gucci, Bonwit Teller, and other up-scale stores. But no misrepresentations were made as to how Ms. Furtado spent the money, and we are satisfied that there was no unfair prejudice.
 
 
 12
 Ms. Furtado further argues that a veiled reference by the government to the fact that she had moved from California without changing the address on the joint checking account implied, unfairly, some sort of subterfuge. The statement at issue was contained in the following passage from the government's closing argument:
 
 
 13
 "What she did ... and what was going through her mind was she had an account in Columbus, Ohio, by her own testimony, at Huntington National Bank. She paid her bills here in Columbus, Ohio, out of that account. The account in California was set up to receive dad's retirement benefits and to pay the bills out there. And when dad died, that didn't change the nature of the account. It was set up to receive those benefits, and that's what was happening.
 
 
 14
 Nobody says she can't use that account. We don't have to prove that she can't use that account. She can use it till the cows come home. But she can't use the government's money that is mistakenly placed in there." (Br. of Appellee at 12.)
 
 
 15
 We see nothing at all improper in this argument.
 
 
 16
 Finally, Ms. Furtado objects to the prosecution's cross-examination of character witness Brenda Alleman, a Columbus lawyer. On direct examination Ms. Alleman testified that she had a high opinion of Ms. Furtado's reputation. On cross-examination she testified that she had no personal knowledge of any professional complaints against Ms. Furtado. The government then asked Ms. Alleman whether her opinion would be different if she were aware of such complaints. Ms. Alleman responded in the negative. There was no objection to this cross-examination at the time.
 
 
 17
 The government had knowledge of a former client of Ms. Furtado who claimed that Ms. Furtado had taken her money and treated her badly. Under Rule 405(a) of the Federal Rules of Evidence a character witness may be cross-examined on relevant specific instances of conduct. See United States v. Frost, 914 F.2d 756, 772 (6th Cir.1990) ("As we have noted, relevant specific instances of conduct are only instances going to the accuracy of the character witnesses' testimony. If ... their direct testimony is addressed to community reputation, inquiry may be made about conduct, and even about charges, which may have come to the attention of the relevant community") (internal quotes and citations omitted). The cross-examination of Ms. Alleman was not improper.
 
 
 18
 AFFIRMED.