RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0289p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ALAN ARNOLD GODOFSKY,

*Defendant-Appellant*.

┐
│
│
│
> No. 18-5450
│
│
│
┘

———————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:16-cr-00059-1—Karen K. Caldwell, District Judge.

Argued: May 9, 2019

Decided and Filed: November 26, 2019

Before: BOGGS, BATCHELDER, and STRANCH, Circuit Judges.

———————

## COUNSEL

**ARGUED:** Michael R. Mazzoli, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellant. Ron L. Walker, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Michael R. Mazzoli, David A. Lambertus, Tricia Frances Lister, COX & MAZZOLI PLLC, Louisville, Kentucky, for Appellant. Charles P. Wisdom, Jr., John Patrick Grant, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

BATCHELDER, J., delivered the opinion of the court in which BOGGS, J., joined, and STRANCH, J., joined in the judgment. STRANCH, J. (pp. 24–25), delivered a separate opinion concurring in the judgment.

————————————

**OPINION**

————————————

ALICE M. BATCHELDER, Circuit Judge.   In this case, a jury convicted a "pill mill" doctor of unlawfully prescribing controlled substances in violation of 21 U.S.C. § 841(a), and the court sentenced him to a below-guidelines prison term and a fine pursuant to § 841(b)(1)(C).   On appeal, the doctor challenges the trial court's refusal to use a jury instruction that he requested and challenges his sentence as procedurally and substantively unreasonable.   We affirm.

**I.**

From March 2011 to January 2012, Dr. Alan Godofsky was a doctor at a "pill mill," the Central Kentucky Bariatric and Pain Management clinic in Georgetown, Kentucky.   The clinic did not accept medical insurance; it accepted payment by only cash (later by debit card), at $300 for the first visit and $250 per visit thereafter, and did not give change.   The clinic had thousands of dollars in cash on hand every day, so the manager was armed with a handgun and patrolled the clinic with a German Shepherd.   The clinic scheduled multiple "patients" at the same time, every 15 minutes, and was often open until after 10:00 p.m.   The clinic received hundreds of "patients" per day, many of whom had traveled long distances and waited for hours for a few minutes with a doctor who would then provide a prescription for a large amount of opioids, usually oxycodone.

Evidence produced at trial, including witness testimony, undercover audio recordings, and Godofsky's own notes, revealed that Godofsky routinely prescribed pain medication, notably oxycodone, without performing any medical examination, discussing risks or alternatives, obtaining informed consent, or ordering follow-up monitoring.   In short, "patients" arrived at the clinic, paid $250 in cash, and waited to see Godofsky for a few minutes, whereupon he might or might not ask a few questions before providing a prescription for opioid-based painkillers.

During his ten months at the clinic, Godofsky worked about 120 days and wrote nearly 6,000 prescriptions for over 552,000 pills or dosage units.   To put this in context, that would be about 50 prescriptions per day—over six per hour for an eight-hour day, meaning one every ten

minutes—at an average of 92 pills each. Almost 90% of the prescriptions Godofsky wrote were for oxycodone. The clinic paid him almost $200,000 during that time, as an independent contractor, which presumably contributed to his personal net worth of $5.6 million. And despite his describing it as a "seedy, filthy place" shortly after he began working there, he continued to work there, without complaining about scheduling or patient care issues, until he was caught.

By 2011, local pharmacies became suspicious and refused to fill Godofsky's prescriptions. That, and an anonymous tip, led the Kentucky Board of Medical Licensure to review Godofsky's medical practices. Based on 19 patient charts, the Board found evidence that Godofsky had prescribed controlled substances that he knew or should have known were not going to be used medicinally for accepted therapeutic purposes. Overall, it concluded that he had committed gross negligence in the practice of pain medicine and acted outside of acceptable and prevailing medical practices. In May 2012, despite denying any wrongdoing, Godofsky agreed to the investigation's findings of fact and entered into an Agreed Order that limited his practice to the specialty of anesthesiology in a perioperative environment and restricted his ability to prescribe controlled substances, limiting it to only patients undergoing surgical or diagnostic procedures. He also agreed to pay a $10,000 fine.

Meanwhile, the United States Drug Enforcement Agency and the Kentucky State Police had been investigating the clinic as a "pill mill," using undercover agents and confidential informants. In 2016, the federal prosecutor indicted the clinic's doctors, including Godofsky, on multiple counts of distributing opioids outside the bounds of the applicable standard of care, in violation of 21 U.S.C. § 841(a).[1] While the other defendants entered guilty pleas, Godofsky did not, and his case proceeded to a jury trial. At trial, Godofsky requested a jury instruction, titled "Good Faith," which would have instructed the jurors that his "good intentions" were enough for his acquittal or, rather, that the prosecutor had to prove that he had not personally, subjectively, believed that the oxycodone prescriptions would benefit his patients. The requested instruction said:

---

[1]The prosecutor also charged the defendants with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, but the jury acquitted Godofsky of that charge. Because neither that charge nor the associated judgment is relevant to this appeal, we will not address it further in this opinion.

Good Faith

It is the theory of the defense that Dr. [Godofsky] treated his patients in good faith. If a physician dispenses a drug in good faith in the course of medically treating a patient, then the doctor has dispensed the drug for a legitimate medical purpose in the usual course of accepted medical practice. That is, he has dispensed the drug lawfully.

'Good faith' in this context means good intentions and an honest exercise of professional judgment as to a patient's medical needs. It means that the defendant acted in accordance with what he reasonably believed to be proper medical practice. In considering whether the Defendant acted with a legitimate medical purpose in the course of usual professional practice, you should consider all of the Defendant's actions and the circumstances surrounding them. If you find that the Defendant acted in good faith in dispensing the drugs charged in these counts of the superseding indictment, then you must find the Defendant not guilty on those counts.

The Defendant does not have to prove to you that he acted in good faith; rather, the burden of proof is on the government to prove to you beyond a reasonable doubt that the Defendant acted without a legitimate medical purpose outside the course of usual professional practice.

Godofsky's attorney told the court that he had taken this instruction from *United States v. Volkman*, 797 F.3d 377, 387 (6th Cir. 2015) (containing identical text but for the last sentence in the second paragraph), and he argued that it be given to the jury "because it is a defense theory [that] if the doctor is acting in good faith [then] he's not violating the law." At the court's invitation, the prosecutor responded:

Your Honor, I strenuously object to the instruction presented by [Godofsky]. One, the instruction that the Court talks about regarding within or without the professional medical standard is an objective standard. This [proposed instruction] makes it a subjective standard and that is not the law. The law is that he has to be within the scope of the professional standard. And what he thinks is irrelevant. It is what is the standard of professional medical conduct, and that is the standard that the law imposes. And this instruction makes a theory that if he thought it was okay, then it's permissible and that's not the law.

After some further discussion, the court opined that the proposed instruction "maybe [] has gone a little too far there in describing what good faith might mean," but withheld a decision until it heard the rest of the evidence at trial. At the completion of trial, the next day, the court returned to this question and explained:

[G]ood faith is really not a defense. A professional, a licensed professional has an obligation to know and comply with the regulations associated with their field. And you can certainly argue that [Godofsky] used his professional judgment within his field. But I don't think that good faith is a defense to it, in that you can't just say well, I did what I thought was best. You have to do what you know the rules require and what you believe complies with those.

Without explicitly saying it this way, the court appears to have drawn a distinction between *subjective* good faith ("well, I did what I thought was best"), which it rejected, and *objective* good faith (do "what you believe complies with [the rules and regulations]"), which it accepted. The court refused to either add "good faith" language to the instruction about the elements or to give the requested stand-alone "good faith" instruction. Thus, as relevant here, the court instructed the jury on the elements as follows:

[T]he defendant is charged with the crime of distributing oxycodone outside the scope of professional medical practice and not for a legitimate medical purpose. Oxycodone is a controlled substance. For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt as to each count:

They are: First, the defendant knowingly or intentionally distributed oxycodone by writing prescriptions outside the scope of professional medical practice and not for legitimate medical purpose.

And that the defendant knew at the time of distribution that the substance was a controlled substance.

If you are convinced that the government has proved all of the elements as to any charge, say so by returning a guilty verdict on the appropriate place on the form. If you have a reasonable doubt as to any one of these elements on any charge, then you must find the defendant not guilty of this charge.

The court also gave the jurors a written version of the instruction to take to the jury room. That written instruction said:

INSTRUCTION NO. 12

In counts 4, 5, 8, 9, and 10, the defendant is charged with the crime of distributing oxycodone outside the scope of professional medical practice and not for a legitimate medical purpose. Oxycodone is a controlled substance. For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt as to each count:

(A) The defendant knowingly or intentionally distributed oxycodone by writing prescriptions outside the scope of professional medical practice and not for a legitimate medical purpose, and

(B) That the defendant knew at the time of distribution that the substance was a controlled substance.

If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

The jury convicted Godofsky on all five counts.

It bears recognizing at this point that by convicting Godofsky based on this instruction the jury necessarily found that he had *knowingly or intentionally* prescribed oxycodone for other than "a legitimate medical purpose" and "outside the scope of professional medical practice." Godofsky's theory is that the jury could further find that he acted with "good intentions," in "an honest exercise of professional judgment," and "in accordance with what he reasonably believed to be proper medical practice." Strictly as findings of fact, the possibility of a jury's finding Godofsky's additional facts is difficult to reconcile with the jury's actual findings.

Following his conviction, Godofsky moved for a new trial, arguing that subjective "good faith on the part of the prescribing physician is a complete defense," that "Godofsky testified at his trial that *he always believed* that his prescriptions were proper and within the bounds of his professional practice," and, therefore, it was reversible error for the trial court to refuse to instruct the jury on his "good faith defense." The district court considered the motion and explained:

[T]he [c]ourt fashioned its jury instructions based upon the Sixth Circuit pattern instructions. The [c]ourt provided the elements for criminal liability under § 841(a)(1) in instruction number twelve, based upon pattern instruction 14.02. Aware of the good faith defense for physicians, the [c]ourt supplemented the instruction with specific language found in 21 C.F.R. § 1306.04. . . .

. . .

Therefore, the statutory exception to criminal liability was at the forefront of the jury instructions—for the jury to find Godofsky guilty, it was abundantly clear that they would have to find his prescriptions to be written outside the scope of professional medical practice and not for a legitimate medical purpose.

Godofsky's argument that the jury was not informed of the exception ignores the plain language they were provided, since the exception was included in the very first element of the crime charged. Moreover, the instruction given by the [c]ourt tracked nearly identical language found in the last sentence of Godofsky's proposed instruction, language that set-out what the Government must prove in this case. The instruction tendered by Godofsky was substantially covered by the instruction provided to the jury, and its exclusion did not constitute error.

Further, the instruction given . . . was an accurate description of the law. Godofsky has pointed to several Sixth Circuit cases, but none of [them] require a district court to include a separate instruction for the 'good faith' defense, rather than including the defense within the substantive elements of the crime.

The district court denied the motion.

At sentencing, Godofsky requested acceptance-of-responsibility credit, objected to a two-level increase for abuse of a position of trust or special skill, and disputed the overall drug quantity calculation. The court denied him a credit for acceptance of responsibility because "he does persist, even to this day [after his conviction], in denying having broken the law or violated standards of medical practice." The court added the increase because a doctor with a medical license has exactly the type of special skill for which the provision was intended. The court attributed to Godofsky the drug quantity that he had himself prescribed, rather than just the amount he had prescribed to the patients who testified at trial. The court determined a total offense level of 32 and a criminal history category of I, which it used to calculate a guideline range of 121 to 151 months in prison. The court then considered the § 3553(a) factors and departed downward to impose a sentence of 60 months in prison, and a fine of $500,000. The court concluded by asking the attorneys for any further objections and both declined to raise any.

## II.

Godofsky says the trial court committed reversible error by refusing to use his requested jury instruction, titled "Good Faith." While he states this theory plainly, his reasons are not so clear or explicit. But, construing his arguments liberally in his favor, he appears to claim three reasons or ways in which this was error, two of which we must reject out of hand. He claims reversible error based on the format and words of the instructions; namely, because the court did not give a separate, stand-alone instruction on "good faith," *see* Appellant Reply Br. at 2 ("a separate instruction specifically defining the good faith concept is essential in a prosecution

like the one in this case"), and, in fact, omitted from the instructions any use of the specific term "good faith," *see* Appellant Br. at 35 ("The instructions did not mention good faith at all."). But we have long held, consistently and without caveat, that the "trial court has broad discretion in crafting jury instructions." *United States v. Rios*, 830 F.3d 403, 431 (6th Cir. 2016). More to the point, we do not require a trial court to use any particular form or words. *Jones v. United States*, 527 U.S. 373, 391 (1999) ("Our decisions repeatedly have cautioned that instructions must be evaluated not in isolation but in the context of the entire charge."); *United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011) ("A trial judge is not required to adopt the language suggested by a defendant in [its] instructions to the jury." (quotation marks omitted)); *Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999) ("There are no magic words that must be included or omitted.").

But these are diversions. Godofsky's true claim is simply that, under a proper application of the law, he was entitled to his requested instruction. We review a challenge to the trial court's denial of a requested jury instruction for abuse of discretion and will reverse only if the denied instruction was: "(1) a correct statement of the law, (2) not substantially covered by the charge actually delivered to the jury, and (3) concern[ed] a point so important in the trial that the failure to give it substantially impair[ed] the defendant's defense." *Volkman*, 797 F.3d at 385. To prevail, Godofsky must satisfy all three prongs. For ease of analysis, we consider the second prong first.

*Did the given instruction "substantially cover" the content of the requested instruction?*

Again, construing Godofsky's arguments liberally in his favor, he requested, but the trial court's instruction omitted, the third of his three substantive components. Those are: legitimate medical purpose, professional medical practice, and subjective good faith. The trial court gave the jury both a verbal and a written version of its instruction, but the two are sufficiently similar that we need recite only one for this comparison. The written instruction said:

INSTRUCTION NO. 12

In counts 4, 5, 8, 9, and 10, the defendant is charged with the crime of distributing oxycodone outside the scope of *professional medical practice* and not for a *legitimate medical purpose*. Oxycodone is a controlled substance. For you

to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt as to each count:

> (A) The defendant knowingly or intentionally distributed oxycodone by writing prescriptions outside the scope of *professional medical practice* and not for a *legitimate medical purpose*, and

> (B) That the defendant knew at the time of distribution that the substance was a controlled substance.

> If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

Whereas, Godofsky's requested instruction said:

Good Faith

[1]      It is the theory of the defense that Dr. [Godofsky] treated his patients in good faith. If a physician dispenses a drug in good faith in the course of medically treating a patient, then the doctor has dispensed the drug for a *legitimate medical purpose* in the usual course of *accepted medical practice*. That is, he has dispensed the drug lawfully.

[2]      'Good faith' in this context means good intentions and an honest exercise of professional judgment as to a patient's medical needs. It means that the defendant acted in accordance with what he reasonably believed to be *proper medical practice*.

[3]      In considering whether the Defendant acted with a *legitimate medical purpose* in the course of *usual professional practice*, you should consider all of the Defendant's actions and the circumstances surrounding them.

[4]      If you find that the Defendant acted in good faith in dispensing the drugs charged in these counts of the superseding indictment, then you must find the Defendant not guilty on those counts.

[5]      The Defendant does not have to prove to you that he acted in good faith; rather, the burden of proof is on the government to prove to you beyond a reasonable doubt that the Defendant acted without a *legitimate medical purpose* outside the course of *usual professional practice*.

(paragraph breaks, paragraph numbering, and emphasis added). Godofsky's attorney told the trial court that he had copied this instruction from *Volkman*, 797 F.3d at 387, which had quoted it

with commendation (discussed further, *infra*).**2**  The *Volkman* panel had removed paragraph (4) when quoting the instruction in its opinion, but Godofsky's attorney resurrected it from the record.  The difference is not determinative for our purposes.

For comparison, both versions have two of the same substantive components that are relevant here; specifically, the jury must find that the prosecutor has proven beyond a reasonable doubt that, when prescribing oxycodone under the circumstances shown at trial, Godofsky:

> (1) knew or intended that he did so outside of the scope of ordinary professional medical practice (i.e., "unprofessionally"); and
>
> (2) knew or intended that he did so for no legitimate medical purpose (i.e., "illegitimately").

If Godofsky had sought an instruction stating merely that even flawed attempts to comply with professional medical practices or even mistaken beliefs that the prescriptions were for legitimate medical purposes would serve to prevent his conviction, then the instruction as given would have substantially covered his request.  The court instructed the jury that, to convict Godofsky, it must find beyond a reasonable doubt that Godofsky's prescriptions of oxycodone were *knowingly or intentionally* outside the scope of ordinary professional medical practice (unprofessional) *and knowingly or intentionally* not for a legitimate medical purpose (illegitimate).  Godofsky could not have *intentionally* acted outside the scope of ordinary professional medical practices if he had reasonably attempted to comply with those practices.  Nor could he have *knowingly*

---

**2**At this point, two things about this professed replication of the instruction from the *Volkman* opinion warrant mention and consideration.  One is that Godofsky's version (above) begins with the second paragraph of the instruction quoted in *Volkman*, thus omitting the preceding paragraph that began: "A physician's own individual treatment methods do not, by themselves, establish what constitutes a 'usual course of professional practice.'"  *Id*. at 387.  This statement renders irrelevant a doctor's personal or individual beliefs, thus rejecting subjective good faith.

And the other is that we might reasonably read paragraphs (1) and (2) not as instructive, but as merely the *Volkman* trial court's rendition of the defense theory, intended to help the jury understand the defense theory in concert with the instructions or to reconcile the two.  Note that paragraph (3) omits any mention of "good faith"; that the *Volkman* panel excised paragraph (4); and that paragraph (5) specifies "legitimate medical purpose" and "usual professional practice"; it does *not* require the prosecutor to disprove good faith as a separate or third element.

Therefore, it would have been helpful—at least to this panel in considering this case—if the *Volkman* panel had been more specific with its editorial commentary that:

> [T]hese instructions amply and accurately conveyed the meaning of 'legitimate medical purpose' to the jury . . . [and] served as a model of clarity and comprehensiveness in defining the unlawful-distribution offense for a case involving a so-called 'pill mill' doctor.

*Id*. at 388.  Given the facts and arguments presented here, we must respectfully disagree with the *Volkman* panel's assessment.

prescribed oxycodone for an illegitimate purpose if he had reasonably believed the prescriptions were for legitimate medical purposes. Such reasonable conduct or beliefs, if proven, would necessarily prevent the jury from finding that he had a knowing or intentional *mens rea*.

Thus, Godofsky claims, as a third component, that the prosecutor had to prove beyond a reasonable doubt that he did not personally or subjectively believe that the oxycodone would nonetheless help his patients, even if the prescriptions were outside of ordinary professional practice and not for legitimate medical purposes. Or, to craft such an instruction ourselves:

> To convict Godofsky, you must find that the prosecutor has proven beyond a reasonable doubt that, when prescribing oxycodone as he did here, he:
>
> (1)     knew or intended that the prescriptions were outside of the scope of ordinary professional medical practice ("unprofessionally");
>
> (2)     knew or intended that he did so for no legitimate medical purpose ("illegitimately"); and
>
> (3)     did not subjectively believe that such unprofessional, illegitimate, non-medical prescriptions of oxycodone would benefit his patients.
>
> If, however, you have some reasonable doubt as to whether Godofsky might have subjectively believed that the otherwise unprofessional and illegitimate prescriptions would benefit his patients, then you must acquit.

Obviously, Godofsky's proposed instruction is neither so explicit nor concise. But parts of Godofsky's instruction, albeit taken out of context, might be read to support that interpretation:

> Paragraph (1): *If* a physician dispenses a drug in good faith in the course of medically treating a patient, *then* the doctor has dispensed the drug for a legitimate medical purpose in the usual course of accepted medical practice.
>
> Paragraph (2): 'Good faith' in this context *means* good intentions and an honest exercise of professional judgment as to a patient's medical needs.
>
>    and: ['Good faith'] *means* that the defendant acted in accordance with what he reasonably believed to be proper medical practice.
>
> Paragraph (4): If you find that the Defendant acted in good faith in dispensing the drugs [as] charged in these counts of the superseding indictment, then you must find the Defendant not guilty on those counts.

Read this way, a jury must acquit Godofsky if he acted with "good intentions," "in accordance with *what he* [] *believed* to be proper medical practice," or acted based on *his* "*judgment* as to a

patient's medical needs." And, again, if he were requesting something less extreme, then the trial court's instruction would have covered it.

On appeal, Godofsky explains that the trial court's instruction did not substantially cover this third component because this "is a concept distinct from and supplemental to the notions of 'legitimate medical purpose' and 'scope of professional medical practice.'" That is, he insists that good faith does not define or attach to "legitimate medical purpose" or "professional medical practice"—it is a different, separate, and stand-alone, third element. If the court had given this subjective-good-faith instruction, he argues, then "the jurors would have [had to] continue[] past the . . . [objective] standard of care [and] . . . considered whether [he] violated the [law] despite his good intentions," and "would have had grounds to acquit him[] notwithstanding their determination that he had breached the medical standard." At trial, the prosecutor objected to this instruction, arguing that Godofsky's subjective belief is "irrelevant" because the law imposes an objective "standard of professional medical conduct," whereas Godofsky's "instruction makes a theory that if he thought it was okay, then it's permissible." And the court agreed, finding that "a licensed professional has an obligation to know and comply with the regulations associated with [his] field"; he "can't just say well, I did what I thought was best," he must do what he knows or believes complies with the rules and regulations.

Looking back at Godofsky's requested instruction in this light, the trial court's instruction did not substantially cover the content of his requested subjective-good-faith instruction. The next question is whether that requested instruction was a correct statement of the law.

*Was Godofsky's requested instruction a correct statement of the law?*

The government charged Godofsky with unlawfully prescribing controlled substances in violation of 21 U.S.C. § 841(a)(1), which makes it unlawful for any person to knowingly or intentionally distribute or dispense a controlled substance, such as oxycodone, which is a Schedule II controlled substance. The implementing regulation elaborates:

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a

corresponding responsibility rests with the pharmacist who fills the prescription. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. 829) and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances.

21 C.F.R. § 1306.04(a).  The Sixth Circuit pattern jury instruction says:

(1) The defendant is charged with the crime of distributing [*name controlled substance*].  [*Name controlled substance*] is a controlled substance.  For you to find the defendant guilty of this crime, you must find that the government has proved each and every one of the following elements beyond a reasonable doubt:

(A) The defendant knowingly [or intentionally] distributed [*name controlled substance*]; and

(B) That the defendant knew at the time of distribution that the substance was a controlled substance.

(2)  Now I will give you more detailed instructions on some of these terms.

(A) The term 'distribute' means the defendant delivered or transferred a controlled substance.  [The term distribute includes the actual, constructive, or attempted transfer of a controlled substance.] [The term distribute includes the sale of a controlled substance.]

(B) To prove that the defendant 'knowingly' distributed the [*name controlled substance*], the defendant did not have to know that the substance was [*name controlled substance*].  It is enough that the defendant knew that it was some kind of controlled substance.  Further, the defendant did not have to know how much [*name controlled substance*] he distributed.  It is enough that the defendant knew that he distributed some quantity of a controlled substance.

(3) If you are convinced that the government has proved all of these elements, say so by returning a guilty verdict on this charge.  If you have a reasonable doubt about any one of these elements, then you must find the defendant not guilty of this charge.

Sixth Cir. Crim. Pattern Jury Instr. 14.02A (current and effective as of July 1, 2019) (available at http://www.ca6.uscourts.gov/pattern-jury-instructions) (brackets in original); *see United States v. Watson*, 778 F. App'x 340, 355 (6th Cir. 2019) ("[W]hen the jury is provided with instructions that 'mirror or track' our own pattern instructions, we generally do not find those instructions misleading or erroneous.").

The trial court explained that it had crafted its instruction based on the Sixth Circuit pattern instruction, the elements stated in § 841(a)(1), and the explanatory language in 21 C.F.R. § 1306.04. None of those three mentions "good faith."

In *United States v. Moore*, 423 U.S. 122 (1975), the Supreme Court upheld a conviction under § 841(a) of a "pill mill" doctor who had argued, among other things, that, as a registered physician, "he could not be prosecuted [under § 841(a)] merely because his activities f[e]ll outside the usual course of medical practice." *Id*. at 139 (quotation marks omitted). The Court rejected that argument because "the scheme of the statute, viewed against the background of the legislative history, reveals an intent [by Congress] to limit a registered physician's dispensing authority to the course of his 'professional practice,'" *id*. at 140, and discussed that history:

> Out of a fear of prosecution many physicians refuse to use narcotics in the treatment of addicts except occasionally in a withdrawal regimen lasting no longer than a few weeks. In most instances they shun addicts as patients.
>
> Congress'[s] solution to this problem [was to] . . . require[] the Secretary of Health, Education, and Welfare, after consultation with the Attorney General and national addict treatment organizations, to determine the appropriate methods of professional practice in the medical treatment of narcotic addiction. [That approach] was designed to clarify for the medical profession the extent to which they may safely go in treating narcotic addicts as patients. Congress pointed out that criminal prosecutions in the past had turned on the opinions of federal prosecutors. Under the new Act, those physicians who comply with the recommendations made by the Secretary will no longer jeopardize their professional careers. *The negative implication is that physicians who go beyond approved practice remain subject to serious criminal penalties*.

*Id*. at 143-44 (quotation marks, editorial marks, citations, and footnote omitted; emphasis added). More to the point for our purposes here, the Court recounted the trial court's jury instructions:

> The trial judge . . . instructed the jury that it had to find beyond a reasonable doubt that a physician, who knowingly or intentionally, did dispense or distribute methadone by prescription, did so other than in good faith for detoxification in the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States.

*Id*. at 138-39 (quotation marks and editorial marks omitted). The Court further noted, with apparent approval, that the trial court had instructed the jury "that Dr. Moore could not be

convicted if he merely made 'an honest effort' to prescribe for detoxification in compliance with an accepted standard of medical practice." *Id*. at 142 n.20. But the Court explained:

> [Dr. Moore] gave inadequate physical examinations or none at all. He ignored the results of the tests he did make. He did not give methadone at the clinic and took no precautions against its misuse and diversion. He did not regulate the dosage at all, prescribing as much and as frequently as the patient demanded. He did not charge for medical services rendered, but graduated his fee according to the number of tablets desired. In practical effect, he acted as a large-scale 'pusher' not as a physician.

*Id*. at 142-43. Thus, the Court upheld the conviction because "[t]he evidence presented at trial was sufficient for the jury to find that [Dr. Moore]'s conduct exceeded the bounds of 'professional practice.'" *Id*. at 142. In short, on those facts, good faith was not at issue—there was no evidence of any "honest effort" to comply with accepted standards of medical practice.

Meanwhile, in *United States v. Carroll*, 518 F.2d 187, 189 (6th Cir. 1975), a defendant doctor had requested an instruction that his prescriptions violated § 841(a) "only if [they] were done outside of the physician-patient relationship." We said that "the obvious intent of Congress" was "that physicians are exempt from [§ 841(a)] . . . when they dispense or prescribe controlled substances in good faith to patients in the regular course of professional practice," and reversed because the court's instructions "failed to inform the jury of this fact." *Id*. at 189-90. When we said "this fact," however, we were not referring to the term "good faith," but to the phrase "in the regular course of professional practice." That is, we faulted the trial court for failing to instruct the jury that physicians are exempt from § 841(a) when they prescribe controlled substances in the regular course of professional practice. The term "good faith" was unnecessary to that analysis. As if to demonstrate, we further opined that "the instruction approved by the court of appeals in *White v. United States*, 399 F.2d 813, 816-17 (8th Cir. 1968), correctly states the rights of a physician under the present Act." *Id*. at 190. That instruction said:

> [T]he defendant, a doctor of medicine, is exempt from [prosecution] . . . if you find that he wrote prescriptions for the persons referred to in the evidence in the course of his professional practice; that the law permits the defendant, being a doctor of medicine, to write prescriptions for the drugs referred to in the evidence, and unless you find and believe that he did not prescribe the drugs in the course of his professional practice, then you must acquit him.

You are further instructed that under the statute, a physician is exempted from the prohibition against the sale and delivery, or the causing of the sale or delivery of depressant or stimulant drugs only when he acts in the ordinary and authorized course of his practice.

*White*, 399 F. 3d at 816-17 (quotation marks omitted). Neither the instruction nor the analysis in *White* includes any mention or application of "good faith"; instead, *White* said the requirement is that the doctor "be acting in the ordinary and authorized course of his profession." *Id*. at 817.

In *United States v. Voorhies*, 663 F.2d 30, 33 (6th Cir. 1981), we considered a defendant doctor's challenge to a jury instruction, which we quoted in pertinent part:

Unless you find beyond a reasonable doubt that an act of dispensation charged in the indictment against a physician defendant was not done by the defendant physician in the usual course of his professional practice, then you should find him not guilty.

. . .

A controlled substance is dispensed by a physician in the usual course of his professional practice, and therefore lawfully, if the substance is dispensed by him in good faith in medically treating a patient.

Good faith in this context means good intentions and honest exercise of best professional judgment as to a patient's medical needs. It connotes an observance of conduct in accordance with what the physician should reasonably believe to be proper medical practice.

*Id.* at 33-34. While this is in line with the language Godofsky used, it does not unequivocally or unmistakably assert *subjective* good faith. Nor does the *Voorhies* panel's commentary, which said that "we believe that[,] taken as a whole, [this instruction] was calculated to protect any physician who made a good faith effort *to comply with the law*." *Id*. at 33 (emphasis added).

Before turning our specific attention to the *Volkman* opinion, we can pause to recognize that when these cases, or cases like them, use the term "good faith," they do not mean *subjective* good faith. Rather, this is more or less *objective* good faith: whether a reasonable doctor under the circumstances could have believed, albeit mistakenly, that he had acted within the scope of ordinary professional medical practice for a legitimate medical purpose. That is, as applied here, even if the jury finds that Godofsky did prescribe oxycodone outside of ordinary professional medical practice and without a legitimate medical purpose, if he did so with a reasonable belief

(i.e., in good faith) that he was acting within the scope of ordinary professional medical practice or for a legitimate medical purpose, then he did not do so knowingly or intentionally.

That was not Godofsky's argument in the trial court, however, nor is it his argument here. Rather, Godofsky's argument is that even though he knowingly and intentionally violated professional medical practices and prescribed oxycodone for no legitimate medical purpose (as the jury found), he cannot be convicted because he personally believes that such unprofessional and illegitimate actions were nonetheless beneficial to his patients. That is, he claims that he can violate the statute if he subjectively *knows better* in an individual case. But that is not the law.

On appeal, Godofsky contends that his requested instruction was necessarily a correct statement of the law because it was copied, almost verbatim, from *Volkman*, 797 F.3d at 387. But, as *Volkman* itself emphasized: "Verbatim, however, does not necessarily mean correct." *Id*. at 385. And, here, while Godofsky's requested subjective-good-faith instruction and the *Volkman* "good faith" instruction are the same in what they *say*, they are very different in what they *mean*.

"Good faith" in Godofsky's instruction means an individual, personal, or subjective "good faith" adherence to his personal opinions or diagnoses; he would have the jurors ignore their finding, beyond a reasonable doubt, that he had knowingly or intentionally prescribed oxycodone for unprofessional, illegitimate, and non-medical needs, and acquit him if they found that he might have held a personal belief that such prescriptions would benefit his patients. But, as in the other cases, the instruction in *Volkman* means an *objective* "good faith" attempt to comply *with the law*, as measured against the actions of a reasonable doctor under the circumstances, allowing for *reasonable* mistake or misunderstanding; that is, a doctor who "act[s] in accordance with what he *reasonably* believed to be proper medical practice." *Id*. at 387 (emphasis added).

The *Volkman* opinion does not provide any exception for subjective good faith. In fact, one part of its instruction, which Godofsky did not copy into his instruction, appears to reject that concept: "A physician's own individual treatment methods do not, by themselves, establish what constitutes a 'usual course of professional practice.'" *Id*. And *Volkman*'s holding neither

requires the prosecutor to disprove the doctor's "good faith" nor requires the court to necessarily instruct the jury on "good faith."  It states the prosecutor's burden three separate times:

> *Gonzales* did nothing to alter the reality that knowingly distributing prescriptions outside the course of professional practice is a sufficient condition to convict a defendant under the criminal statutes relating to controlled substances.

*Id*. at 386 (citing *Gonzales v. Oregon*, 546 U.S. 243 (2006)) (quotation marks omitted).

> The defendant does not have to prove to you that he acted in good faith; rather, the burden of proof is on the government to prove to you beyond a reasonable doubt that the defendant acted without a legitimate medical purpose outside the course of usual professional practice.

*Id*. at 387 (quoting the jury instruction).

> This case is not about whether the defendant acted negligently or whether he committed malpractice.  Rather, in order for you to find the defendant guilty, you must find that the government has proved to you beyond a reasonable doubt that the defendant's action was not for a legitimate medical purpose in the usual course of professional practice.

*Id*. at 388 (quoting another jury instruction).  To repeat, none of these either requires the prosecutor to disprove the doctor's "good faith" or the court to instruct the jury on "good faith."

Godofsky's requested instruction was an incorrect statement of the law *in the way that he meant it*, as permitting subjective good faith as an excuse, and therefore, in that context, the trial court properly refused the instruction.  But regardless of the way that he meant it, the plain text of Godofsky's requested instruction is, for all practical purposes, a verbatim copy of the instruction that we quoted in *Volkman*, 797 F.3d at 386-87, which we described as "not only adequate but an example of model instructions for cases such as this one."  In that context, the elephant in the room is that *Volkman* is published Circuit precedent, setting out the governing law for this court as much as for the district court, but also providing guidance to subsequent parties, practitioners, and courts.  It would ill behoove us to second guess or undermine *Volkman*'s guidance, issued so emphatically a mere four years ago, by suggesting that it is not, on its own terms, a correct statement of the law.  It is.

This leads us to a perhaps hypothetical but necessary question of whether Godofsky was entitled to his "Good Faith" instruction as written, despite his different intended meaning.  The

district court found, and we likewise found in the first prong of this analysis, that the court's instruction substantially covered this *objective*-good-faith concept and, therefore, Godofsky's instruction was unnecessary. But assuming *arguendo* that it was not substantially covered, the question is whether the law required the trial court to give that instruction based on the evidence and arguments presented at trial. We address that question under the third prong.

*Did the refusal to give Godofsky's requested instruction substantially impair his defense?*

The third prong of the test requires Godofsky to demonstrate on appeal that his requested instruction "concern[ed] a point so important in the trial that the failure to give it substantially impair[ed] [his] defense." *See Volkman*, 797 F.3d at 385. On one hand, "when a theory of defense finds some support in the evidence and in the law, a defendant is entitled to some mention of that theory in the instructions." *Theunick*, 651 F.3d at 589 (citing *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976) ("In a criminal case it is reversible error for a trial [j]udge to refuse to present adequately a defendant's theory of defense.")). On the other hand, the court's refusal to give an instruction does not substantially impair the defense when the jury was already "well aware" of that defense theory. *United States v. Jackson*, 347 F.3d 598, 607 (6th Cir. 2003) (citing *United States v. Laury*, 49 F.3d 145, 152 (5th Cir. 1995)). Either way, "[w]e review jury instructions as a whole in order to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." *Theunick*, 651 F.3d at 589 (quotation marks and citations omitted).

In *United States v. DeBoer*, 966 F.2d 1066, 1068 (6th Cir. 1992), a pharmacy technician appealed his conviction under § 841(a), claiming, among other things, that the trial court erred by failing to instruct "the jury concerning the 'good faith' defense," to which we explained:

> [T]he [trial court] judge reviewed with the jury the provisions of 21 U.S.C. § 841(a)(1) and further instructed them that physicians and pharmacists were exempt from liability if they distributed controlled substances in the usual course of business pursuant to 21 C.F.R. § 1306.04. These instructions effectively informed the jury of the good faith defense.

*Id*. Because DeBoer did not preserve this issue by raising it at trial, our review was for plain error and is, consequently, of limited utility here, where Godofsky did preserve the issue. But *DeBoer* does, nevertheless, set a threshold: we do not require an express "good faith defense"

instruction in *all* cases; instead, some instructions under some facts or circumstances, may "effectively inform[] the jury of the good faith defense" without explicit reference to it.

So, being careful to limit this analysis to an *objective*-good-faith theory, and assuming *arguendo* that the trial court's given instruction did not sufficiently cover that defense theory, we consider (1) whether the evidence at trial supports that theory, *see Theunick*, 651 F.3d at 589, (2) whether the jury was not already "well aware" of that theory without the instruction, *see Jackson*, 347 F.3d at 607, and, therefore, (3) whether the omission of the instruction substantially impaired Godofsky's defense, *see Volkman*, 797 F.3d at 385. Given the assumptions that frame this analysis, the second consideration is inapt; the jury would not have been "well aware" of the *objective*-good-faith-defense theory inasmuch as Godofsky did not argue that theory at trial.

Godofsky's *objective*-good-faith theory would be that, although mistaken, he *reasonably believed* that he was engaged in "proper medical practice," was treating patients for "a legitimate medical purpose," and had "made a good faith effort to *comply with the law*." *See Voorhies*, 663 F.2d at 33 (emphasis added). Put another way, we consider whether an ordinary doctor, under the same or similar circumstances, would also have reasonably made the same mistake or harbored the same misunderstanding. Would the average practicing physician have *reasonably* mistaken the activities at this clinic as falling within the "scope of ordinary professional medical practice"? By his own account, the clinic was a "seedy, filthy place"; it demanded payment of $250 per visit, cash only, no change, no insurance; the manager was armed with a handgun and a German Shepherd to protect the cash on hand; it scheduled multiple patients at the same time (every 15 minutes), all day until after 10:00 p.m., to process hundreds of customers per day. Or, would the average practicing physician have *reasonably* mistaken the prescriptions written here as being for "legitimate medical purposes"? These "patients" traveled very long distances and waited for hours for a few minutes with a doctor, who wrote prescriptions at a rate of 50 per day (one every ten minutes) for 90 pills each, almost 90% of which were oxycodone, without conducting any medical examinations, and with no discussion of risks or alternatives, informed consent, or follow-up monitoring. Godofsky argued at trial that, despite all of this, he believed that he was nevertheless helping these patients by prescribing this oxycodone under these conditions. But this evidence refutes any possibility that such belief was objectively reasonable

or that Godofsky had "made a good faith effort to comply with the law." *See Voorhies*, 663 F.2d at 33.

On whole, the evidence does not support an *objective*-good-faith instruction and, correspondingly, the omission of such an instruction did not substantially impair Godofsky's defense. We hold that the trial court's given instructions were sufficient based on the facts, law, and theories of this case, and the court did not err by refusing Godofsky's requested instruction.[3]

## III.

Godofsky claims five errors in his sentencing; namely, the court (1) assessed a two-level enhancement for abuse of position of trust, (2) denied him a reduction for acceptance of responsibility, (3) counted in its drug-quantity calculation prescriptions other than those from his five specific counts of conviction, (4) imposed a $500,000 fine without explanation, and (5) punished him more severely than his similarly situated co-defendants. None of these claims has merit.

The court increased Godofsky's offense level by two upon finding that he had "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. On a challenge to a § 3B1.3 increase, we review the district court's factual findings for clear error and its ultimate determination de novo. *United States v. Reichert*, 747 F.3d 445, 454 (6th Cir. 2014). Godofsky argues that he could not have abused anyone's trust because the purported victims were not "victims," but were informants or undercover investigators. Because they were not honestly seeking and relying upon his services as a physician, there was no trust to abuse. The court,

---

[3]The government argues that even if we were to find error in the trial court's refusal of Godofsky's instruction, that error would be harmless because Godofsky suffered no prejudice from it. In stating the three-prong test used in this opinion, we commonly add that we "will reverse a judgment based on a claim of error only if the instructions, viewed as a whole, were confusing, misleading and prejudicial," *United States v. Blanchard*, 618 F.3d 562, 573 (6th Cir. 2010) (quotation marks omitted), or that "[r]eversal is not required if the defendant suffers no actual prejudice," *United States v. Kelsor*, 665 F.3d 684, 695 (6th Cir. 2011). A criminal defendant suffers no prejudice, and "is not entitled to relief[,] if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Hendrickson*, 822 F.3d 812, 824 (6th Cir. 2016) (quotation marks omitted). The government contends that, based on the evidence produced at trial, it appears—beyond a reasonable doubt—that the omission of this instruction did not contribute to Godofsky's guilty verdict. Because we find no error in the trial court's refusal of Godofsky's instruction, however, we need not address harmless error.

however, actually focused on Godofsky's "special skill" as a licensed physician.  The commentary defines  "special skill" as "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing," and offers doctors as an express example.  U.S.S.G. § 3B1.3 cmt. n.4.  The district court properly applied § 3B1.3.

The court denied Godofsky's request for a reduction of his offense level based on his purported acceptance of responsibility.  "The district court's decision to deny an acceptance-of-responsibility reduction is entitled to great deference," *United States v. McCloud*, 730 F.3d 600, 605 (6th Cir. 2013), and therefore we "typically review for clear error," *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013).  Godofsky argues that his decision to go to trial does not preclude an acceptance of responsibility, and that his acquittal on the conspiracy charge validates his decision.  While it is true that a defendant's going to trial does not automatically preclude a sentence reduction for acceptance of responsibility, "such a defendant must fall into the rare situation where he goes to trial to assert and preserve issues that do not relate to factual guilt[,] such as challenging the constitutionality of a statute."  *United States v. Calvetti*, 836 F.3d 654, 670 (6th Cir. 2016) (quoting U.S.S.G. § 3E1.1 cmt. n.2).  Godofsky does not meet this exception.  He went to trial solely to challenge his factual guilt based on his claimed subjective belief that he was helping his patients.  The district court properly denied his purported acceptance of responsibility.

The court counted all of the prescriptions that Godofsky wrote at the clinic in calculating his total drug quantity, but Godofsky argues that the court may only count the drugs that were specifically attributed to him in the five counts of conviction.  We review this de novo.  *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996).  The Sentencing Guidelines instruct the court to consider all "relevant conduct" and describe relevant conduct as "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(2).  Thus, the district court properly considered all acts that were part of the same course of conduct as the offense, meaning all the prescriptions Godofsky wrote.

The court fined Godofsky $500,000, which he now protests was unjustified and unexplained.  Because Godofsky did not object to the fine at sentencing, we review for plain

error.  *See United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).  On plain error review, he must show: "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights[,] and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *Id.*  Godofsky argues that 18 U.S.C. §§ 3571 and 3572 set forth "fine-specific factors" that a court must consider when imposing a fine, *see United States v. Lumbard*, 706 F.3d 716, 726 (6th Cir. 2013), and the district court here did not expressly address or discuss any of them at his sentencing.  Even accepting this as error, Godofsky has not shown (or even argued) that such error was plain, affected his substantial rights, or diminished the integrity or reputation of the judicial process.  The statutory maximum fine for this offense is $1,000,000 per count, 21 U.S.C. § 841(b)(1)(C), and the guidelines range is $35,000 to $1,000,000 total, U.S.S.G. §§ 5E1.2(c)(4) & (h)(1).  The fine of $500,000 is midway between.  It is also well within Godofsky's financial resources, based on his net worth of $5.6 million.  This was not plain error.

Finally, Godofsky complains that the court sentenced him more severely than his codefendants, who were sentenced on their guilty pleas.  We review for an abuse of discretion. *United States v. Sierra-Villegas*, 774 F.3d 1093, 1103 (6th Cir. 2014).  But, as we have often explained, the Guidelines and 18 U.S.C. § 3553(a)(6) are concerned with "national disparities" among defendants with similar criminal backgrounds convicted of similar criminal conduct, not disparities between co-defendants.  *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). Under § 3553(a)(6), "the district court may consider the defendant's sentence in comparison with that of co-defendants at sentencing, but need not do so; it is a matter of discretion."  *Sierra-Villegas*, 774 F.3d 1093, 1103.  Moreover, the court sentenced Godofsky to a prison term nearly 50% below the bottom of the advisory range, and such below-guidelines sentences are presumptively reasonable.  *See id.*  The court did not abuse its discretion.

None of Godofsky's challenges to his sentence have merit.

### IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.

-----------------------------------------

**CONCURRING IN THE JUDGMENT**

-----------------------------------------

JANE B. STRANCH, Circuit Judge, concurring in the judgment.  I concur in the judgment because the totality of the jury instructions in this case adequately informed the jury. I write separately to address the good faith instruction.

A physician is not guilty of distributing drugs if "he acted 'in good faith.'"  *United States v. Hughes*, 895 F.2d 1135, 1141 (6th Cir. 1990) (quoting *United States v. Moore,* 423 U.S. 122, 140 (1975)).  In *United States v. Volkman*, we reviewed a good-faith instruction, which included this relevant language:

> The defendant does not have to prove to you that he acted in good faith; rather, the burden of proof is on the government to prove to you beyond a reasonable doubt that the defendant acted without a legitimate medical purpose outside the course of usual professional practice.

797 F.3d 377, 387 (6th Cir. 2015).  We held that the instruction was "not only adequate" but "served as a model of clarity and comprehensiveness in defining the unlawful-distribution offense for a case involving a so-called 'pill mill' doctor."  *Id.* at 388.  Dr. Godofsky proposed a good-faith instruction, which in relevant part, was identical to the instruction praised in *Volkman*. The Government objected, and the district court removed the instruction based on its argument that "good faith is really not a defense" to an unlawful-distribution charge.

This basis for rejecting the good-faith instruction cannot be reconciled with Supreme Court or Sixth Circuit precedent.  *Id.*  Nor can the conclusion that Godofsky's requested instruction was an incorrect statement of the law.  *Id. See also United States v. Moore*, 423 U.S. 122, 138–39 (1975) (citing with approval a district court's instruction to "the jury that it had to find 'beyond a reasonable doubt that a physician, who knowingly or intentionally, did dispense or distribute by prescription, did so other than in good faith.");  *United States v. Seelig*, 622 F.2d 207, 213 (6th Cir. 1980) ("The defendant was entitled to have the jury instructed that registered doctors are exempt from the provisions of the drug abuse statute when they dispense or prescribe controlled substances in good faith to patients in the regular course of professional practice.");

*United States v. Carroll*, 518 F.2d 187, 189 (6th Cir. 1975) (finding district court erred by failing to instruct the jury that "physicians are exempt from the provisions of the drug abuse statute when they dispense or prescribe controlled substances in good faith to patients in the regular course of professional practice.").

Including a good-faith instruction like the one lauded in *Volkman* is the best practice. I recognize, however, that we have not mandated the use of specific wording from *Volkman*. *See United States v. DeBoer*, 966 F.2d 1066 (6th Cir. 1992). In *DeBoer*, jury instructions stated that "physicians and pharmacists were exempt from liability if they distributed controlled substances in the usual course of business." *Id*. at 1068. The defendant argued that the district court should have included a good faith instruction, but we rejected that claim on the ground that the "instructions effectively informed the jury of the good faith defense." *Id*. Here too, the totality of the district court's instructions, which included that the Government had to prove "beyond a reasonable doubt" that Dr. Godofsky "knowingly or intentionally distributed oxycodone by writing prescriptions outside the scope of professional medical practice and not for a legitimate medical purpose," "effectively" informed the jury of the good-faith defense. Therefore, even though the basis for rejecting the good-faith instruction was incorrect and best practices counsel for use of our "model" instruction for pill-mill cases, I concur in the judgment.