NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0133n.06

No. 20-1393

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | Mar 15, 2021 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| DOMINIQUE TRUMBO, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE:   **BATCHELDER, MOORE, and BUSH, Circuit Judges.**

**ALICE M. BATCHELDER**, **Circuit Judge.**   A jury convicted defendant Dominique Trumbo of one count of conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and three counts of receiving illegal renumeration in a federal healthcare program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), and 18 U.S.C. § 2, stemming from his participation in a healthcare kickback scheme.  On appeal, Trumbo argues for reversal of his conviction because (1) the trial court improperly admitted character evidence and gave faulty jury instructions, and (2) the prosecutor's conduct denied him a fair trial.  Finding no merit in Trumbo's arguments, we affirm his conviction.

**I.**

Medicare Part A covers inpatient services, including home healthcare for individuals who are disabled or over 65 years old.  To qualify for home healthcare services, the eligible patient must obtain a referral from a physician.  After that, the patient chooses a home healthcare agency

to provide the prescribed services. If the agency providing the home healthcare wants Medicare reimbursement, it must abide by certain Medicare rules and regulations, including the federal anti-kickback statutes. The anti-kickback statutes protect consumers' rights to choose their healthcare service providers by punishing providers and individuals who participate in schemes that hinder consumers' ability to choose.

In this case, a jury convicted Trumbo of conspiring with home healthcare agencies to receive kickbacks and of receiving kickbacks (money) from a home healthcare agency called U.S. Home Health Care, in exchange for consumer information.

Trumbo owned and operated Trumbo Consulting Agency (TCA), a telemarketing company that targeted Medicare beneficiaries in several states, including Michigan. TCA sought to enroll its eligible clientele with various home healthcare agencies. To expedite the process, TCA contracted with doctors who provided home healthcare prescriptions for new enrollees. TCA even offered current patients certain perks, such as free housekeeping, to entice reluctant patients to continue their home healthcare services.

Pertinent to this case, after TCA enrolled the new patients, the prescribing doctors referred the patients to U.S. Home Health, owned by Tasadaq Ali Ahmad. In exchange, U.S. Home Health paid Trumbo between $200 and $500 for each new patient who successfully billed Medicare. Ahmad testified that to cover up his per-patient kickback scheme, TCA would bill U.S. Home Health for hours worked, and U.S. Home Health would use false notations on the checks, such as "community liaison service" and "patient coordinator."

From 2005 to 2016, Trumbo recruited 376 patients. From 2013-2017, Medicare paid U.S. Home Health $524,752 for 87 patients that Trumbo recruited. During that time, Trumbo deposited $101,360 worth of checks from U.S. Home Health.

In 2018, the government charged Trumbo with conspiring with Ahmad and others to commit healthcare and wire fraud, in violation of 18 U.S.C. § 1349; conspiring with Ahmad and others to pay and receive healthcare kickbacks, in violation of 18 U.S.C. § 371; and three counts of receipt of kickbacks in connection with a federal healthcare program, in violation of 42 U.S.C. § 1320a-7b(b)(1)(A), and 18 U.S.C. § 2.

Before trial, the government notified the district court that it planned to introduce other-act evidence under Federal Rule of Evidence 404(b). R. 41. Specifically, to prove knowledge and lack of mistake, the government planned to introduce evidence that Trumbo received illegal healthcare kickbacks from two other home healthcare agencies. The evidence included testimony from Rommel Perez, the owner of Premium Home Health, who told authorities that he paid Trumbo for referrals on a per-patient basis. The district court ruled, over Trumbo's objection, that the evidence as it pertained to Trumbo's "allegedly receiving money in exchange for patients receiving medical treatment" was admissible under Rules 404(b) and 403 to show "intent, plan, knowledge, and absence of mistake or accident."

At trial, the government presented seven witnesses, including Ahmad and Perez, and introduced numerous exhibits, including recorded telephone calls between Ahmad and Trumbo, emails between Trumbo and the home healthcare agencies, and bank records. Trumbo's defense comprised only his testimony and financial records.

The jury convicted Trumbo on the kickback-related charges and acquitted him on the healthcare-fraud charge. He timely appeals.

**II.**

On appeal, Trumbo argues that we must reverse his conviction for four reasons: (1) the district court improperly admitted Rule 404(b) evidence; (2) the district court permitted the

government to impeach Trumbo improperly; and (3) the district court refused to give Trumbo's proposed good-faith jury instruction; and (4) the prosecutor's conduct unfairly prejudiced Trumbo's defense. None of his arguments warrants reversal of his conviction.

### a. Federal Rule of Evidence 404(b)

Trumbo argues that the district court improperly admitted under Federal Rule of Evidence 404(b) evidence relating to Trumbo's kickback agreements with Premium Home Health and Maxicare Home Health Agency. Specifically, Trumbo argues that the prejudicial effect of the 404(b) evidence outweighed any probative value. We disagree.

Rule 404(b) bars evidence of a defendant's prior bad acts when offered only to prove character. Fed. R. Evid. 404(b)(1). A court may, however, admit prior-bad-acts evidence if it is relevant to prove a defendant's "motive, opportunity, intent, preparation, plan, [or] knowledge," Fed. R. Evid. 404(b)(2), so long as any unfair prejudicial effect does not substantially outweigh the evidence's probative value under Federal Rule of Evidence 403. We review for abuse of discretion the district court's Rule 403 determination. *United States v. Pritchard*, 964 F.3d 513, 523–24 (6th Cir. 2020). "District courts enjoy 'broad discretion' in making the prejudice determination." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018).

Under both 42 U.S.C. § 1320a-7b(b)(1)(A), and 18 U.S.C. § 2, the government had to prove that Trumbo "willfully" received kickbacks from U.S. Home Health in exchange for patient referrals. In other words, it had to prove that Trumbo knew that he was receiving kickbacks unlawfully. *See United States v. Roth*, 628 F.3d 827, 834 (6th Cir. 2011) ("Generally . . . in criminal cases, in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." (cleaned up)). Trumbo's defense was that he did not have the requisite mens rea because he was not aware of U.S. Home

Health's illegal conduct. Trumbo's testimony, therefore, made the prior-bad-act evidence highly probative to show that he did have the requisite mens rea, i.e., that he willfully received kickbacks and that he was not mistakenly entangled in U.S. Home Health's illegal scheme.

We are not convinced that the evidence was more unfairly prejudicial than probative. Limiting instructions diminish "any unfair prejudice by reducing the risk that the jury would put the evidence to an improper purpose." *United States v. Potter*, 927 F.3d 446, 452 (6th Cir. 2019). Here, the district court instructed the jury that it could use the evidence "only as it relates to the Government's claim on the Defendant's intent, knowledge, or absence of mistake" and that it "must not consider it for any other purpose."

The district court did not abuse its discretion by finding that any unfair prejudice resulting from the admission of the Rule 404(b) evidence did not substantially outweigh that evidence's probative value.

### b. Rule 607 Impeachment Evidence

Trumbo next argues that the trial court plainly erred by allowing the government to introduce prior-bad-acts evidence when it cross-examined Trumbo about his 2014 and 2015 tax returns. At trial, Trumbo used his tax returns to refute the government's claim that he received approximately $100,000 from U.S. Home Health. Trumbo testified that in 2014, he reported income of $34,027, and in 2015 he reported income of $23,968. Trumbo claimed that he "[a]lways" reported "all" his wage income and denied that he was paid on a per-patient basis. To bolster his testimony, Trumbo introduced into evidence his 2014-2017 tax returns. On cross-examination, the government questioned Trumbo about his reported income and about thousands of dollars in payments he received from home healthcare agencies but did not report on his 2014-

and 2015-income tax returns. Trumbo had no explanations for those omissions, stating only that he needed to talk to his tax consultant.

Because Trumbo did not object to that line of questioning at trial, and instead raises it here for the first time, we review for plain error. *United States v. Crawford*, 943 F.3d 297, 311 (6th Cir. 2019). "To establish plain error, a claimant must show: (1) error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that 'seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Brown*, 332 F.3d 363, 370 (6th Cir. 2003).

Trumbo's argument fails on the first prong. Even if we assume that the unreported-income evidence is evidence of prior bad acts under Rule 404(b), Trumbo opened the door to its admission when he testified about the accuracy of his tax returns and entered them into the record. As we said in *United States v. Ross*, 502 F.3d 521, 529 (6th Cir. 2007), "the government is allowed to impeach any statement made by [the defendant] in his direct examination through cross-examination under Federal Rule of Evidence 607." Moreover, we have "consistently recognized the broad scope of allowable impeachment evidence." *United States v. Markarian*, 967 F.2d 1098, 1103 (6th Cir. 1992). In fact, "[a] defendant's introduction of evidence may render his prior acts relevant for impeachment purposes, 'thus making admissible what may not have been admissible otherwise' under Fed. R. Evid. 404(b)." *United State v. Clingman*, 521 Fed App'x 386, 395 (6th Cir. 2013). That is precisely what happened here. The government sought to impeach Trumbo only after he testified that he accurately reported his income on his 2014 and 2015 tax returns.

Trumbo argues in the alternative that the court plainly erred by failing to sua sponte instruct the jury that it could consider that evidence for impeachment purposes only. But this argument fails too. The district court is under no obligation to sua sponte limit evidence to which a party does not object. *United States v. Henderson*, 626 F.3d 326, 338 (6th Cir. 2010). After all, Federal Rule of Evidence 105 requires the objecting party to "timely request" the limiting instruction.

The district court did not plainly err by allowing the government to cross-examine Trumbo about his tax returns.

### c. Good-Faith Jury Instruction

Trumbo argues that the district court abused its discretion when it declined to give his proposed instruction of "good faith" regarding his four anti-kickback charges.

We review for abuse of discretion the district court's denial of a proposed jury instruction. *United States v. Maddux*, 917 F.3d 437, 447 (6th Cir. 2019). We consider the instructions "as a whole in order to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for aiding the jury to reach its decision." *United States v. Godofsky*, 943 F.3d 1011, 1027–28 (6th Cir. 2019) (internal quotation marks omitted). "A district court's refusal to give a proposed jury instruction is an abuse of discretion only if the proposed instruction (i) correctly states the law, (ii) is 'not substantially covered' by the instructions actually given, and (iii) concerns a point so important 'that failure to give it substantially impairs the defendant's defense.'" *Maddux*, 917 F.3d at 447. Here, the court's instructions substantially covered Trumbo's proposed instruction.

Trumbo requested that the district court instruct the jury on his "good-faith defense to willfulness" as to each count. But because the good-faith instruction is limited to charges of fraud, the district court gave it only for Count 1, the healthcare-fraud conspiracy charge. *See* Sixth Circuit

Pattern Jury Instruction § 10.04 (2019).  The court nonetheless instructed the jury that "[t]he word willfully means that the act was done voluntarily and purposefully with the intent to violate a known legal duty; that is, with the intent to do something the law forbids."

Because "the good-faith requirement is effectively bundled into the willfulness instruction," the district court substantially covered Trumbo's request.  *United States v. Damra*, 621 F.3d 474, 502 (6th Cir. 2010).  Therefore, the court did not abuse its discretion.

### d.  Prosecutorial Misconduct

Trumbo argues on appeal that the prosecutors committed misconduct by (1) portraying him as a "bad man" and (2) improperly vouching for the credibility of Ahmad and Perez.  Trumbo did not object to any of this at trial, so we review for plain error.  *See United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008).  Both arguments fail.

To evaluate a claim of prosecutorial misconduct, we must first determine whether the statements at issue were improper.  *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008).  If the statements were improper, we next assess whether they were "so 'flagrant' as to warrant reversal."  *Id*. When the defendant fails to object at trial to the conduct at issue, he must show that the prosecutor's comments were "exceptionally" flagrant.  *Gonzalez*, 512 F.3d at 292.

Trumbo argues that the government's closing argument misled the jury by resorting to "exaggeration and hyperbole in an effort to overwhelm the jury" with "large numbers" and improperly admitted evidence.  But the government did not say anything that was not supported by the record.  For example, the closing argument reflected the number of patients that Trumbo recruited for U.S. Home Health, the amount of money that he received as illegal kickbacks, and the amount of money that Medicare paid to U.S. Home Health as a result of those referrals.  Furthermore, the government did not exaggerate in stating that Trumbo deposited $121,000 in

kickback checks. The record supports that portion of the government's argument, which directly refuted Trumbo's testimony that he received only $15,000 to $30,000 of home healthcare payments each year. Moreover, the government's mentions of Trumbo's tax returns were likewise proper responses to Trumbo's testimony that he accurately reported his income in 2014 and 2015. Considering the government's closing argument "in the context of the trial as a whole," we find no plain error. *See Henry*, 545 F.3d at 377.

Next, Trumbo argues that the government improperly vouched for Ahmad's and Perez's credibility by asking them about the terms of their plea agreements, specifically whether they agreed to testify truthfully against Trumbo in exchange for a possible lower sentence. This claim also fails.

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999). We have held that "it is not improper vouching for the prosecutor to refer to the plea agreements of cooperating witnesses in the expectation that their credibility will be at issue." *United States v. Reid*, 625 F.3d 977, 983 (6th Cir. 2010). It also is not improper "to elicit testimony that the plea agreement contains a promise to testify truthfully." *Id.; see also United States v. Trujillo*, 376 F.3d 593, 608–09 (6th Cir. 2004) (The prosecutor did not engage in improper vouching when his questions and comments "merely encompassed the terms of [the cooperating witnesses'] plea agreements.").

Here, the government did nothing more than ask Ahmad and Perez about the terms of their plea agreements. It did not imply that agreements guaranteed truthfulness, and it made clear that the judge, not the government, would determine Ahmad's and Perez's sentences. *See Reid*, 625

F.3d at 983–84 (finding no improper vouching where the prosecutor "made sure to emphasize that it was the judge who would decide whether to grant any reduction in sentence for providing substantial assistance" and "did not imply any special knowledge regarding the credibility or truthfulness of the cooperating witnesses"). The government's colloquy was appropriate.

Trumbo's prosecutorial misconduct arguments do not satisfy the plain-error standard.

## III.

For the foregoing reasons, we **AFFIRM** the judgement of the district court.